SONIA MARTÍNEZ VDA. DE RIVERA, demandante y recurrida, *v.* SOUTHLAND LIFE INSURANCE COMPANY, demandada y recurrente.

*Número:* R-75-352          *Resuelto:* 18 de octubre de 1976

---

[5] Roca Sastre, *opus cit.* pág. 246.

[6] Morell y Terry, *Legislación Hipotecaria,* Tomo 2, pág. 252, Segunda Edición (1927).

274

Fiddler, González & Rodríguez y Jorge R. Jiménez, abogados de la recurrente; Arturo Ortiz Aponte y Rafael A. Mirabal Conde, abogados de la recurrida.

EL JUEZ ASOCIADO SEÑOR RIGAU emitió la opinión del Tribunal.

En este caso dictamos orden para mostrar causas por las cuales no debía dejarse sin efecto la sentencia recurrida y ordenarse que el caso se viese en los méritos. La comparecencia de la demandante recurrida nos ha persuadido de que el caso se contrae a una controversia de derecho, que no hay cuestiones de hecho relevantes que dilucidar y que procedía que el tribunal de instancia dictase sentencia sumaria, como lo hizo. *Mercado Riera* v. *Mercado Riera*, 87 D.P.R. 566 (1963); *Roth* v. *Lugo*, 87 D.P.R. 386 (1963); *Zalduondo* v. *Iturregui*, 83 D.P.R. 1 (1961).

Por su parte, la demandada recurrente en su comparecencia también afirma que no existe controversia de hechos y solicita sentencia sumaria a su favor o, en la alternativa, que se expida el auto. Habiendo quedado persuadidos, como lo estamos, de que procedía resolver el caso mediante sen-

tencia sumaria, vamos a dirigirnos a los méritos de la solicitud de revisión.

En 8 de noviembre de 1973 Pedro Rivera González firmó una solicitud de póliza de vida de $101,000 y pagó $278.40 por concepto de la prima por adelantado de los primeros seis meses. Hizo la venta de la póliza y recibió el pago de la prima la Sra. Agnes Medina de Vélez, agente de la demandada. El asegurado acordó someterse a un examen médico el día 12 de aquel mes de noviembre pero fue asesinado un día antes de esa fecha.

Sonia Martínez, la viuda del asegurado, reclamó judicialmente los beneficios del seguro. La compañía aseguradora solicitó sentencia sumaria y alegó que Rivera no estaba asegurado cuando murió. Acompañó su moción con una declaración de Jack R. Wahlquist, su Vicepresidente, en la cual se declara que nunca se emitió la póliza en cuestión; que la cubierta sería efectiva solamente desde que se completase el informe médico; y que no existía responsabilidad de la aseguradora bajo dicha póliza.

La demandante presentó una declaración jurada suya y otra de la agente Agnes Medina de Vélez. Provisto así de las correspondientes declaraciones juradas y de prueba documental, el tribunal de instancia dictó sentencia sumaria a favor de la demandante. Debemos confirmar.

■ La jurisprudencia y los tratadistas sostienen ampliamente la posición que aquí asumimos. Antes de discutirlos es preciso entrar en algunos detalles. La agente de la aseguradora, en su declaración jurada expresó que el asegurado "pago dicha prima por adelantado después de haberle informado la suscribiente que de así hacerlo quedaría asegurado desde esa fecha." A eso la compañía opone el texto de los documentos, los cuales son la solicitud de la póliza y el recibo condicional que aparece impreso como parte de un formulario de cuatro páginas. La solicitud de la póliza incluye en su parte inferior un apretado y extenso párrafo, impreso en

letra diminuta, de muy difícil lectura y comprensión. Para el asegurado normal y corriente dicho párrafo debe resultar prácticamente incomprensible.

La situación es parecida en cuanto al recibo condicional. En el mismo se expresa que la póliza no entrará en vigor a menos que no se cumplan las condiciones contenidas en el reverso, pero en esa misma página, en su parte inferior, aparece también otro extenso párrafo en letra muy diminuta, de muy difícil lectura y comprensión. Las condiciones antes aludidas aparecen, también en letra diminuta. (1)

■ Los tribunales y los tratadistas están acordes en que no se puede esperar que el asegurado promedio pueda leer y entender esas complicadas cláusulas preparadas por las aseguradoras e impresas en dicha forma. También están contestes los tribunales en que cuando la aseguradora acepta el pago de la prima con la solicitud, se establece un seguro interino o temporero hasta que el seguro permanente se formalice o hasta que la compañía rechace la solicitud y devuelva el dinero recibido. Los tribunales han dicho que las condi-

---

(1) Leen como sigue:

"Subject to its conditions and limitations, the policy as applied for will be considered as having been in force from the date of the application (Parts 1 and 2) or the date of the Medical Report (Part 2A), if required by the Company, or the date requested in the application, whichever is later, provided the following conditions precedent are first satisfied.

"1. The duly authorized officers of the Company at its Home Office shall within their sole discretion be satisfied that on said date the Proposed Insured was acceptable under the rules, limits and standards of the Company for the amount and plan of insurance applied for and at the premium stated in the application.

"2. If this application is for an amount, which when added to all other Insurance on the life of any Proposed Insured in force in this Company, exceeds $200,000.00, the total liability of the Company shall be limited to $200,000.00 and return of the premium paid for any excess amount under this application.

"Neither the agent nor the medical examiner is authorized to accept risks or pass upon insurability, to make or modify contracts, or to waive any of the Company's rights or requirements or otherwise bind the Company in any way by any promise or statement."

ciones de contratación son muy desiguales y desfavorables para el asegurado y que resulta irrazonable que la compañía acepte el dinero y no asuma responsabilidad alguna.(²)

La posición generalizada es que cuando la compañía recibe el importe de primas por adelantado y entrega un recibo o documentos ambiguos, o se le ha hecho creer al comprador de la póliza que quedó asegurado desde que hizo el pago, existe un seguro interino o temporero que lo cubre hasta que la aseguradora acepta el riesgo o lo rechace y devuelva el dinero. 1 Couch *On Insurance*, 2d, sec. 14:42; 12 Appleman, *Insurance Law and Practice*, sec. 7221 y ss.; Keeton, *Basic Text on Insurance Law*, (1971) sec. 2.3; Fortunato, *Conditional Receipts: Should the Uninsurable Have Insurance?*, 1 The Forum #3, pág. 5; Anno. *Temporary Insurance*, 2 A.L.R.2d 943; *Tripp* v. *Reliable Life Insurance Co.*, 499 P.2d 1155 (1972).

*Toevs* v. *Western Farm Bureau*, 483 P.2d 682 (1971), es un caso normativo y casi idéntico al de autos. Toevs y su esposa acordaron la compra de una póliza de vida a través de un agente de la aseguradora. Pagaron $168.75 por concepto de la prima y les fue entregado un recibo condicional. El asegurado, Walter Toevs, debería someterse a un examen médico. Pocos días después Toevs murió a consecuencia de una herida de bala. A la fecha de su muerte la compañía no había expedido la póliza. Se resolvió que era irrazonable que la aseguradora cobrara la prima y tomase la posición de que el comprador de la póliza no estaba asegurado. El tribunal además señala que las partes no están en igual posición de regateo. Señala las ventajas económicas, sicológicas y de regateo que le da a la compañía el hecho de tener ya en su poder el importe de la prima. El tribunal resolvió, a la pág.

---

(²) De hecho los tribunales usan un término mucho más fuerte que irrazonable. Describen la situación como "unconscionable." *Smith* v. *Westland Life Insurance Co.*, 115 Cal. Rptr. 750 (1974); *Toevs* v. *Western Farm Bureau Life*, 483 P.2d 682 (1971).

686, que el pago de la prima creó un seguro temporero, sujeto a ser rechazado por la compañía, desde el momento que se pagó la prima. Razonó que como al morir Toevs la compañía no había rechazado el seguro, el contrato temporero estaba en vigor. Confirmó al tribunal inferior que había ordenado el pago de la póliza.

En *Smith* v. *Westland Life*, 115 Cal. Rptr. 750 (1974), la situación es más extrema porque en este caso la compañía aseguradora llegó a rechazar el riesgo, pero no llegó a devolver el importe de la prima. Al pagar la prima el asegurado recibió un recibo condicional. Smith se sometió al examen médico pero como su trabajo era peligroso la compañía decidió rechazar la póliza y hacer otro contrato. Smith se negó a firmar el segundo contrato y en esos días murió en un accidente automovilístico. El tribunal resolvió que a la muerte de Smith estaba en vigor el contrato temporero creado por el pago de la prima. Señaló el tribunal que no bastaba por parte de la compañía rechazar el riesgo sino que debió haber devuelto el importe de la prima que había cobrado. Señaló que el seguro temporero no expira hasta que se rechaza el riesgo y se devuelve la prima cobrada. Vide, *Smith* v. *Minnesota Mut. Life Ins. Co.*, 195 P.2d 457 (1948); *Stark* v. *Pioneer Casualty Co.*, 34 P.2d 731 (1934); *Combined American Insurance Company* v. *Parker*, 377 S.W.2d 213, 215 (1964); *Douglass* v. *Mutual Ben. Health & Accident Ass'n*, 76 P.2d 453, 459 (1937); *Reck* v. *Prudential Ins. Co. of America*, 184 A. 777, 778 (1936); *Reynolds* v. *Northwestern Mut. Life Ins. Co.*, 176 N.W. 207, 209 (1920).

Igual que en otras jurisdicciones el tribunal señaló que es irrazonable retener el importe de la prima sin proveer seguro. Vide, *Ryman* v. *American Nat. Ins. Co.*, 96 Cal. Rptr. 728, (1971); *Turner* v. *Investors Syndicate Life Ins. & Annuity Co.*, 108 Cal. Rptr. 47 (1973).

En *Damm* v. *National Insurance Co.*, 200 N.W.2d 616 (1972), el recibo condicional era muy parecido al del caso de

autos. Señalaba determinada fecha de vigencia o la fecha en que se llevase a cabo el examen médico. Damm no se hizo el examen médico y la compañía no expidió la póliza pero Damm pagó la prima inicial. Pocos días después Damm murió en un accidente. La compañía tomó la posición de que su solicitud no se había completado porque él no se había hecho el examen médico. El tribunal falló igualmente que en los casos antes reseñados. Resolvió que el pago de la prima había creado un contrato temporero de seguro.

Como hemos señalado, el caso de autos es muy parecido a los anteriores y tanto la jurisprudencia como los tratadistas están contestes en la existencia de un contrato de seguro temporero que nace cuando el asegurado paga la prima inicial y la compañía o su agente reciben el pago. Para terminar dicho contrato temporero la compañía no solamente debe rechazar el riesgo sino también devolver el importe de la prima pagada. Esta norma clara y uniforme establece certeza razonable en la industria de seguros y en esta clase de contratos.

*Se confirmará la sentencia recurrida.*

El Juez Asociado Señor Martín no intervino.

