**In re N–500L CASES.**

**Civ. No. 78–2126.**

United States District Court,
D. Puerto Rico.

Feb. 27, 1981.

Philip Silverman, Speiser, Krause & Madole, Washington, D. C., Harvey B. Nachman, Santurce, P. R., Paul E. Calvesbert, Hato Rey, P. R., attys. of the plaintiffs' committee.

Domingo A. Alvarez, Rio Pierdras, P. R., Richard H. Silver, Miami, Fla., Gabriel I. Penagaricano, Santurce, P. R., Jorge Ortiz Brunet, Ortiz, Toro, Ortiz, Bruner & Navelra, Hato Rey, P. R., James A. Toro, Old San Juan, P. R., Angel L. Tapia Flores, Rio Piedras, P. R., Rafael Ojeda Colón, San Juan, P. R., Gustavo Gelpi, Old San Juan, P. R., Jorge M. Suro, Santurce, P. R., Robert E. Schneider, Jr., Santurce, P. R., and Jiminez & Fuste, Hato Rey, P. R., for plaintiffs.

Francisco Ponsa Flores, San Juan, P. R., Alex Gonzalez, Dubon, Gonzalez & Vasquez, San Juan, P. R., Calvin F. David, Walton, Lantaff, Schroeder & Carson, Miami, Fla., Francisco, Agrait, Oliveras, Agrait & Oliveras, Hato Rey, P. R., Jose A. Masini Soler, Soler Favale & Masini Soler, Hato Rey, P. R., Phillip J. Kolczynski, U. S. Dept. of Justice, Washington, D. C., Vilma J. Vilá Sellés, Asst. U. S. Atty., Hato Rey, P. R., Steve Segal, Rio Piedras, P. R., Alberto J. Pérez Hernández Dubón, González & Vazquez, San Juan, P. R., Robert J. Griswold, San Juan, P. R., for defendants.

## DECISION AND ORDER

TORRUELLA, District Judge.

On September 26, 1978, a ten passenger Twin Beech aircraft FAA Registration Number N–500L (hereinafter referred to as the "N–500L"), carrying five passengers and piloted by Jerry Cannon, crashed in the Barrio Obrero Section of San Juan, Puerto Rico while on approach to land at Isla Verde International Airport. The aircraft was a total loss, all on board perished, a number of persons on the ground were injured, and property in the immediate vicinity of impact was damaged.

The cause of this accident, which is the subject matter of the present suits, is alleged to have been wake turbulence created by an Eastern Air Lines (hereinafter called "EAL") L–1011 aircraft which is claimed to have overtaken the N–500L pursuant to instructions issued by FAA air traffic controllers in the airport's tower.

At the time of the accident the N–500L was owned by Codefendant Francisco Cruz (hereinafter called "Cruz"). He operated the aircraft as an airtaxi pursuant to the provisions of 14 C.F.R. 135.1 et seq. The flight in question was under charter by Cruz to Codefendant Old South Air Service, Inc. d/b/a Air Caribbean Corp. (hereinafter called "Air Caribbean"), a common practice between Cruz and Air Caribbean, and was designated Air Caribbean Flight Number 309 from Aguadilla, Puerto Rico.

Various Plaintiffs have filed actions for damages against EAL, the United States of America, Air Caribbean, Air Caribbean's Underwriters at London (the main one being Cornhill Insurance Company, hereinafter collectively referred to as "Cornhill") and Cruz. Although at the time of the accident the N–500L was purportedly insured by Corporación Insular de Seguros (hereinafter called "Corporación Insular"), coverage for this accident has been expressly denied by Corporación Insular. Claims by all Codefendants, except the United States, to the effect that said policy does in fact afford coverage brings us to the issue at hand.

The insurance contract in question is Policy Number AIR 090553 issued for the period from June 22, 1978 through June 22,

1979. The exclusions section of this policy states:

"EXCLUSIONS. This policy does not apply and no coverage is afforded:

. . . . .

2. To any Insured while the aircraft is in flight;
  (a) if piloted by other than the pilot or pilots designated in the Declarations; . . ."

Paragraph 10 of the Declarations states: "When in flight the aircraft will be piloted only by: [1]

Francisco Cruz, a commercial pilot with 4500 hrs. total time . . ." [2]

It is the contention of Corporación Insular that since Cruz was not the pilot at the time of the accident the casualty is excluded from coverage. In our opinion this particular contention is correct notwithstanding the various matters called to our attention by claimants.

█ It is black letter law that if the terms of a contract are unambiguous, courts are duty-bound to interpret them as reflecting the will of the parties at the time of agreement and must refrain from further speculation as to their alleged contractual intentions. Article 1233 of the Civil Code (31 L.P.R.A. § 3471) states:

"If the terms of a contract are clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its stipulations shall be observed.

If the words should appear contrary to the evident intention of the contracting parties, the intention shall prevail."

See also *Luce & Co. v. Labor Relations Board*, 86 P.R.R. 402 (1962); *National City Bank v. Martínez*, 41 P.R.R. 162 (1930); *Menéndez v. De la Fuente*, 34 P.R.R. 363 (1925); *Solomons v. León*, 6 P.R.R. 87 (1904).

█ To our mind, there is nothing unclear or ambiguous about the language in question: Corporation Insular is responsible if the aircraft is "piloted *only* by . . . Francisco Cruz . . ." (Emphasis supplied). The language which follows in Paragraph 10 (". . . a commercial pilot with 4500 hrs. total time . . ."), rather than generally describing the conditions that must be met by *any* pilot before there is coverage, were in the nature of a warranty or inducement by the person receiving the insurance coverage regarding the pilot that is covered: Cruz. They were in fact a description of Cruz' own experience rather than that of any other of his substitutes. In our opinion, any lingering doubts are dispelled by the language in other policies between Cruz and Corporación Insular, whereby not only Cruz, but also "any commercial pilot" with the same number of hours as stated by Cruz in those policies was also covered.

This conclusion does not dispose of the controversy.

Cruz was an air taxi/commercial operator certified and operating under the provisions of the Federal Aviation Act, 49 U.S.C. § 1301 *et seq.* He was thus required to comply not only with 14 CFR Part 135 of the Federal Aviation Regulations, but also with the so-called Economic Regulations contained in 14 CFR Part 298 adopted by the Civil Aeronautic Board (CAB) pursuant to the provisions of the Federal Aviation Act, supra.

Section 1371 of 49 U.S.C. states:

"(q)(1) No certificate shall be issued or remain in effect unless the applicant for such certificate or the air carrier, as the case may be, complies with regulations or orders issued by the Board governing the filing and approval of policies of insurance or plans for self-insurance in the amount prescribed by the Board which are conditioned to pay, within the amount of such insurance, amounts for which such applicant or such air carrier may become liable for bodily injuries to or the death of any person, or for loss of or damage to property of others, resulting from the operation or maintenance of aircraft under such certificate."

---

1. This part is printed in the original.

2. This part is typed into the original.

The certificate referred to therein is the operation certificate of the airtaxi i. e., the certificate which allowed Cruz to legally render services to the public.

Thereafter the CAB adopted insurance requirements for air taxi operators, which are found at 14 CFR Part 298, Subpart E. In this respect 14 CFR 298.41(b) thereof states:

"Each certificate of insurance, and each endorsement limiting the permitted exclusions, shall be signed in ink by an authorized officer or agent of the insurer and shall be on forms prescribed and furnished by the Board." (footnote omitted).

These regulations also state (at 14 CFR 298.43):

"(b) The liability of the insurer shall apply to all operations by the insured operator in 'air transportation', as that term is defined by the Federal Aviation Act of 1958...."[3]

Section 298.44 of 14 CFR specifically provides the exclusions that may be contained in the policy or certificate of insurance. The only one of relevance to the present case reads:

"(h) Any loss arising from operation of an aircraft ... or (2) by a pilot ... not named in or meeting the qualifications, experience, and currency requirements provided in the policy of insurance;"

The CAB provides insurers with a standard certificate of insurance referred to as Form 257 (see footnote 7, 14 CFR 298.41(b)). Effective June 22, 1978 Corporación Insular signed and issued such a form certifying that it had issued "a policy or policies of Aircraft Liability Insurance to Francisco Cruz, c/o Air Caribbean" for operations conducted with an aircraft with FAA regis-

tration N–500L, type Twin Beech. The certification also states:

"Each policy listed in this certificate has been amended by attachment of a Standard Endorsement (CAB Form 262, Revised November, 1977)."[4]

Form 262 is also provided by the CAB to the insurer. Paragraph 3 of this form states:

"The Insurer ... agrees that ... *no term, condition, limitation*, stipulation, or other provision contained in the policy or any endorsement attached thereto or any violation thereof by the Named Insured, *except the exclusions contained in this endorsement, shall relieve the Insurer of liability* with respect to such bodily injury or property damage...." (emphasis supplied).

It further states, at Paragraph 5:

"*The EXCLUSIONS of the policy* to which this endorsement is attached *are deleted and are replaced* by the following exclusions:

.   .   .   .   .

(i) Any loss arising from operation of an aircraft (1) ... (2) by a pilot ... not named in *or* meeting the qualifications, experience, and currency requirements provided in the attached policy of insurance." (emphasis supplied).

As may be readily observed, this exclusion is a verbatim repetition of the exclusions set forth in Section 298.44 of the CAB's Economic Regulations.

The situation in a nutshell is as follows: the CAB issues regulations pursuant to law to protect the public from financially irresponsible operators, and to provide for a fund from which recovery can be sought by aggrieved parties. The insurer issues a cer-

---

**3.** 49 U.S.C. § 1301(10) defines this term to mean "interstate, overseas, or foreign air transportation." 49 U.S.C. § 1301(21) *defines* "interstate air transportation" as the "carriage by aircraft of persons or property as a common carrier for compensation or hire ... in commerce ... (a) ... between places in the same territory or possessions of the United States...." 49 U.S.C. § 1301(31), in defining "possessions of the United States" states that

"[w]here not otherwise distinctly expressed or manifestly incompatible with the intent thereof, references in this chapter to possessions of the United States shall be treated as also referring to the Commonwealth of Puerto Rico." It is thus apparent that the provisions of the Federal Aviation Act of 1958, are applicable to the flight here in question.

**4.** See also footnote 7, 14 CFR 298.41(b).

tification to the CAB, to the effect that insurance covers the operator seeking CAB approval, with full knowledge that this coverage is a condition precedent to the granting of governmental permission to operate. The insurer further knows that these being requirements of law, the traveling public and anyone doing business with such an operator has a right to rely on compliance with said insurance certifications, including any endorsements thereto.

In construing the terms of CAB Forms 257 and 262 we are also bound to apply the standards as set out in Article 1233 of our Civil Code, supra. At first glance these appear to be clear or unambiguous. They explicitly provide for the amendment of Policy Number AIR 090553 by the exclusions contained in Form 262. The exclusions of the policy are *deleted and replaced* by those in Form 262.

In reading Exclusion (i), reproduced above, we are again faced with what appears to be clear and unambiguous language. We find that excluded coverage is any loss which arises from operation of the aircraft by a pilot who is not named in the policy. In this respect, this condition is almost word for word the same as the exception that is contained in Paragraph 2(a) of the exclusions section of Policy Number AIR 090553, as issued. However, Exclusion (i) states another alternative for exclusion: if the pilot does not meet the "qualifications, experience, and currency requirements" of the policy.

Thus, put in the affirmative, the policy *does* cover any loss arising from operation of an aircraft: (1) by a named pilot *or* (2) by a pilot meeting the qualifications, experience and currency requirements provided for in the policy.

In looking at the policy the only reference found to "qualifications, experience [or] currency requirements" is the statement in Item 10 which, as indicated previously, refers to a specific name, "Francisco Cruz", who is then described as "a commercial pilot with 4500 hrs. total time." Although in considering this language *vis-a-vis* the original policy, we concluded that it refers solely

to Cruz, when we consider it in the light of the second alternative for coverage, which by virtue of its amending the original claim is a different policy, ambiguity is created which must be resolved from the consideration of all of the terms of the contract so as to harmonize the same. Article 1237 of the Civil Code, 31 L.P.R.A. § 3475, *Caballero v. Kogan*, 73 P.R.R. 617 (1952); *Olazibal v. U. S. Fidelity*, 103 D.P.R. 448 (1975). In so doing we are forced to conclude that in this policy, as amended by the language in Form 262, "a commercial pilot with 4500 hrs. total time" is the equivalent of the "qualifications, experience and currency requirements" alternative—coverage provision contained in Exclusion (i) of the said Form. This is particularly the case when we consider the provisions of Article 1240 of the Civil Code (31 L.P.R.A. § 3478) which requires that interpretation of an "obscure" (i. e., ambiguous) stipulation in a contract be against the party which causes it. Although Form 262 is not an adhesion contract in the technical sense inasmuch as it was prepared by the CAB, it was nevertheless *issued* by Corporación Insular with full knowledge of its contents and its intended use. Any ambiguity "must [thus] not favor" it. Cf. *Zequeira v. Urban Renewal and Housing Corp.*, 83 P.R.R. 847 (1961). See also *Rivera v. Insurance Co. of P.R.*, 103 D.P.R. 91 (1974).

In the final analysis we are left with having to decide, whether at the time of the casualty in question the pilot of the N–500L met the qualification of being "a commercial pilot with 4500 hrs. total time." The evidence is undisputed that Jerry Cannon met these qualifications. Coverage of the accident by Corporación Insular's Policy Number AIR 090553 follows as a consequence.

IT IS SO ORDERED.