Carmen GONZALEZ,
Plaintiff, Appellant,

v.

JOHN HANCOCK MUTUAL LIFE
INSURANCE COMPANY,
Defendant, Appellee.

No. 90–1152.

United States Court of Appeals,
First Circuit.

Heard Sept. 10, 1990.
Decided March 6, 1991.

Enrique Alcaraz–Micheli, with whom Ferrer & Alcaraz was on brief, for plaintiff, appellant.

Ricardo F. Casellas, with whom Jay A. Garcia–Gregory and Fiddler, Gonzalez & Rodriguez were on brief, for defendant, appellee.

Before CAMPBELL, Circuit Judge, COFFIN, Senior Circuit Judge, and CYR, Circuit Judge.

CYR, Circuit Judge.

Plaintiff-appellant Carmen Gonzalez filed a claim with defendant-appellee John Hancock Mutual Life Insurance Company ("Hancock") for interim insurance benefits on the life of her husband, who died within two months after filing an insurance application with Hancock. Since no policy of insurance ever issued and a contractual precondition for interim insurance coverage was not met, Hancock denied coverage. The only question in the case is whether interim life insurance coverage was in force at the time of decedent's death. We affirm the district court judgment in favor of Hancock.

I

BACKGROUND

Under date of February 20, 1982, plaintiff and her husband ("decedent") submitted separate applications to Ponce General Agency ("Ponce") for life insurance coverage with Hancock. On February 23, 1982, decedent prepaid the initial premiums relating to both insurance applications. The insurance application executed by decedent expressly precluded interim coverage in the event the requested accidental death benefit exceeded $150,000. On March 9, 1982, Hancock directed Ponce to refund the premium prepaid with decedent's applica-

tion for a $200,000 accidental death benefit. On the same day, Ponce issued a refund check to decedent and gave it to an agent for delivery to decedent.

After it received notification that decedent had died from gunshot wounds, Hancock asked Ponce whether decedent's advance premium had been refunded and whether he had been told that he was not covered. Ponce sent Hancock a telex ("Hantel") the next day, which stated that decedent had been told that he was not covered and that he had requested that Ponce retain the advance premium pending Hancock's final decision on his application. *See infra* note 3.

## II

## DISCUSSION

■ The Insurance Code of Puerto Rico prescribes no particular interpretive approach in these circumstances. "Under Puerto Rico precedent, when the Insurance Code fails to speak conclusively to an insurance-related issue, the Civil Code is often referenced as a supplemental source of law." *United States Fire Ins. Co. v. Producciones Padosa, Inc.*, 835 F.2d 950, 955 (1st Cir.1987). The Civil Code incorporates the familiar principle that if "the terms of a contract are clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its stipulations shall be observed," P.R.Laws Ann. tit. 31, § 3471 (1968); *see also Producciones Padosa*, 835 F.2d at 955; *Luce & Co. v. Labor Relations Bd.*, 86 P.R.R. 402, 410 (1962); *Esbri v. Estate of Juan Serralles*, 3 P.R.R. 24, 39 (1902), and the court should "confine[ ] itself" to a literal application of the unambiguous terms of the contract, *Esbri*, 3 P.R.R. at 39, eschewing "speculation as to [the parties'] alleged contractual intentions," *In re N–500L Cases*, 517 F.Supp. 816, 817 (D.P.R.1981). We review judicial interpretations of life insurance applications *de novo*. *Atlas Pallet, Inc. v. Gallagher*, 725 F.2d 131, 134–35 (1st Cir.1984).

The interim coverage provision in the Hancock insurance application was set forth a few inches above decedent's signature.

> The contract of insurance shall take effect ... *if* (1) an advance payment is made ...; and (2) *the total amount of insurance ... applied for on the proposed insured in this Company* [ ] *does not exceed ... $150,000 accidental death benefit....*

(Emphasis added.) Thus, interim coverage was unambiguously precluded on any application for more than $150,000 in accidental death benefits.

The Civil Code of Puerto Rico dictates that unambiguous contract provisions be given full effect. "In conditional obligations, the acquisition of rights ... shall depend upon the event constituting the condition." P.R. Laws Ann. tit. 31, § 3042 (1968). *See also Producciones Padosa*, 835 F.2d at 955. Moreover, the Civil Code comports in these regards with settled principles of insurance law. "If the effectiveness of the contract of temporary insurance is made dependent upon the fulfillment of specifically named conditions, these conditions must be complied with before the contract can go into effect...." 2 R. Anderson, *Couch on Insurance 2d* § 14:39 (1984). *See also, e.g., Gladney v. Paul Revere Life Ins. Co.*, 895 F.2d 238 (5th Cir.1990) (interim coverage never operative due to failure to satisfy preconditions); *Garde v. American Life Ins. Co.*, 147 Ill.App.3d 1034, 101 Ill.Dec. 110, 113, 498 N.E.2d 292, 295 (1986) ("Unless the conditions precedent to coverage are fulfilled, no interim coverage takes effect."); *Armstrong v. United Ins. Co. of America*, 98 Ill.App.3d 1132, 54 Ill.Dec. 313, 321, 424 N.E.2d 1216, 1224 (1981) (coverage provided by conditional receipt limited by "expressly communicated conditions."). As decedent applied for a $200,000 accidental death benefit, there can be no doubt that an unambiguous precondition for interim insurance coverage was never met.

Plaintiff nonetheless contends that interim coverage obtains by operation of Puerto Rico law where an insurer, after rejecting an insurance application, fails to refund the prepaid premium prior to the death of the

insured. Plaintiff places principal reliance on *Sonia Martinez Vda. de Rivera v. Southland Life Ins. Co.*, 105 D.P.R. 273 (1976) (official translation), in which the Supreme Court of Puerto Rico observed that—

> [t]he courts ... agree that when the insurer accepts the payment of the premium with the application, an interim or temporary insurance is created until the permanent insurance is legalized or until the company rejects the application and refunds the money received. The courts have stated that ... it is unreasonable for the company to accept the money without assuming any liability whatsoever.

105 D.P.R. at 276.[1] On the strength of the quoted passage, plaintiff Gonzalez argues that interim coverage commenced when decedent tendered the advance premium on February 23 and remained in effect at the time of death, despite Hancock's express rejection of coverage on March 9, since Hancock did not refund the premium until after decedent's death.

■ *Southland* is unavailing in the present circumstances, as it articulates a narrower rule than plaintiff would have us endorse.

> The generalized position is that when the company receives the payment of the premiums in advance *and issues a receipt or ambiguous documents, or the buyer of the policy is made to believe that he is insured from the time when he makes the payment,* an interim or temporary insurance exists which covers him until the insurer accepts or rejects the risk and refunds the money.

105 D.P.R. at 277 (emphasis added). Thus, *Southland* prescribes other preconditions for interim coverage, over and above prepayment of the premium. An insurer will not be deemed to have extended interim coverage unless the applicant (i) was issued a conditional receipt or ambiguous documents *or* (ii) was led to believe that coverage began on the date the premium was prepaid. In the event either alternative precondition is satisfied, interim coverage becomes effective upon prepayment of the premium and remains in effect until the insurance application is rejected *and* the premium is refunded. Since neither alternative precondition for interim coverage was satisfied in the present case, coverage was never activated under *Southland.*

The *Southland* court took particular note of the facts that (i) the applicant had been issued a conditional receipt, (ii) he had been told by the agent that interim coverage would begin immediately and (iii) the interim coverage disclaimers in the insurance application and conditional receipt[2] were in "a crowded and lengthy paragraph, in very small print, quite difficult to read and understand," 105 D.P.R. at 275–76, and "practically incomprehensible for the average insured," *id.* at 276. *See also Toevs v. Western Farm Bureau Life Ins. Co.*, 94 Idaho 151, 155, 483 P.2d 682, 686 (Idaho 1971) (interim coverage came into force when premium prepaid and applicant given conditional receipt, as contractual preconditions for interim coverage were in "complex legalistic and ambiguous phrasing") (relied on in *Southland*).

## III

## CONCLUSION

The present case includes none of the elements which indicated that the decedent in *Southland* had been led to believe that he would be insured from the time he tendered the advance premium. Unlike the *Southland* disclaimer, the straightforward interim coverage disclaimer in the Hancock insurance application signed by the decedent was conspicuous, unambiguous and unequivocal. The decedent never received

---

1. The *Southland* applicant prepaid the premium *after being told that coverage would thereupon commence.* The insurance application and conditional receipt, on the other hand, stated that interim coverage would be effective as of the date of the medical report, provided the insured ultimately was determined insurable as of the date of the medical examination. The applicant was murdered the day before he was to receive the medical examination.

2. It is stipulated that decedent was neither given, nor did he sign, a conditional receipt.

a conditional receipt. There is no evidence that decedent was ever told that he would receive interim insurance coverage. Quite the contrary, there is uncontroverted evidence that decedent was told by Ponce representatives on two occasions that he was not insured.[3]

*Affirmed.*

---

**3.** The owner of Ponce General Agency testified, without objection, that both the decedent and plaintiff Gonzalez had been informed by a Ponce agent, Lissette Soto, that, notwithstanding prepayment of the premium, decedent could not be covered because the application exceeded company limits. Another Ponce agent, Mr. Diaz, testified that he told decedent, at the time of the medical examination, that decedent could not be covered before Hancock evaluated the medical report.

It is unnecessary, therefore, to consider plaintiff's claim that the magistrate erroneously admitted into evidence the "Hantel" in which Ponce advised Hancock that decedent had been told that Hancock had rejected the application and that decedent had refused to accept the premium refund. *See, e.g., Kowalski v. Gagne,* 914 F.2d 299, 308 (1st Cir.1990) (error in admission of testimony held harmless where court can say "with fair assurance ... that the judgment was not substantially swayed by the error"), quoting *Lataille v. Ponte,* 754 F.2d 33, 37 (1st Cir.1985). Obviously, since interim coverage never obtained under *Southland,* it was unnecessary, as a matter of law, to demonstrate that interim coverage was terminated by refunding the advance premium prior to decedent's death.