Joseph NAHAN, Plaintiff,

v.

PAN AMERICAN GRAIN MFG.
CO., INC., et al., Defendant.

No. CIV. 94–1014(DRD).

United States District Court,
D. Puerto Rico.

Aug. 10, 1999.

**420**

Harry A. Ezratty, San Juan, PR, for plaintiff.

Juan A. Ramos–Diaz, San Juan, PR, for defendant.

Jose F. Sarraga–Venegas, San Juan, PR, for crsclm and defendant.

### *OPINION*

DOMINGUEZ, District Judge.

On November 6, 1998, co-defendant, El Fénix de Puerto Rico ("El Fénix"), filed a

Motion for Summary Judgment alleging that the General Commercial Liability Policy issued to co-defendant Pan American Grain Mfg. Co. ("Pan American"), does not provide liability coverage for the personal injuries sustained by plaintiff. (Docket No. 97). Plaintiff, Joseph Nahan ("Nahan") filed a brief in opposition to the Motion for Summary Judgment on January 4, 1999. (Docket No. 101). Co-defendants Pan American and the vessel IBT Zorra filed a brief in opposition on February 3, 1999 challenging El Fénix' Motion for Summary Judgment. (Docket No. 104). The Court is now ready to rule on the matter. For the reasons that follow, this Court **DENIES** El Fénix' Motion for Summary Judgment.

### *FACTUAL BACKGROUND*

Nahan is an American Merchant seaman from Seattle, Washington. He was hired on August 20, 1993 by co-defendant Pan American as a Second mate, to work aboard their vessel, the IBT Zorra in Portland, Oregon. (Docket Nos. 1, 36). On October 2, 1993, plaintiff signed a contract with Pan American stating that plaintiff was to sail from Sacramento, California to San Juan, Puerto Rico, and "any other ports as designated by the owner." (Docket No. 1). On October 27, 1993, during his scope of employment with Pan American, Nahan suffered an accident causing serious bodily injury. (Docket Nos. 36, 74). Plaintiff suffered injuries while installing a ladder being rigged from the IBT Zorra to Pan American's rice pier in San Juan, five days after the vessel was moored. Plaintiff suffered injuries to his right arm, left leg and other portions of his body. (Docket No. 91).

Subsequent to the accident, Nahan was hospitalized in Hospital Industrial[1] until December 18, 1993, when he refused medical treatment once he realized he was being treated under the Puerto Rican Work-

1. Hospital Industrial is a public hospital administered by the Puerto Rico State Insurance Fund. (Docket No. 36).

men's Accident Compensation Act ("PRWACA").[2] (Docket Nos. 1, 36). Pan American insured its workers under the PRWACA with the Puerto Rico State Insurance Fund, as required by law by the Commonwealth of Puerto Rico. (Docket Nos. 1, 36, 101, 104). Nahan was covered under the PRWACA during the scope of his employment with Pan American. (Docket No. 71).

Nahan filed this case on January 1,1994 against defendants Pan American, and its insurer El Fénix, as well as an *in rem* cause of action against the vessel ITB Zorra pursuant to the General Maritime Laws of the United States and Jones Act, 48 U.S.C.App. § 688. Plaintiff seeks to recover damages for personal injuries he sustained on October 27, 1993, in San Juan, Puerto Rico, due to co-defendant Pan American's negligence and unseaworthiness of its vessel, the IBT Zorra. According to the prior opinion issued by the court in the instant case regarding defendant's motion for summary judgment, as a consequence of the injury occurring in Puerto Rican territorial waters, the issue in this case turned on whether defendant can be held liable, in the case that:

> "...plaintiff is exempt from coverage under the Maritime Laws of the U.S. and the Jones Act, 48 U.S.C.App. § 688 because of potential coverage under the PRWACA under the doctrine of *Fonse-*

*ca v. Prann,* 282 F.2d 153 (1st Cir.1960), and subsequent judicial interpretations." (Docket No. 74). Pan American did not obtain any separate personal injury policy to cover any seaman injured on the vessel IBT Zorra. (Docket Nos. 74, 101, 104). Plaintiff sued El Fénix, Pan American's insurance carrier, alleging that the policy issued by El Fénix to Pan American provides coverage for plaintiff's injuries, pursuant to 46 U.S.C.App. § 688 ("Jones Act")[3] and the general principles of maritime law.[4] (Docket No. 101).

On November 6, 1998, co-defendant, El Fénix filed a Motion for Summary Judgment alleging that the General Commercial Liability Policy issued to Pan American does not provide coverage for the injuries sustained by plaintiff. (Docket No. 97). On January 4, 1999, plaintiff filed a brief in opposition to the Motion for Summary Judgment arguing that although El Fénix points to exclusions under the policy, which may deny coverage to plaintiff, El Fénix, however, does not address nor recognize exceptions to the exclusion, which override the exclusion and consequently grant coverage to plaintiff's injuries. (Docket No. 101). Subsequently, on February 3, 1999 co-defendants Pan American and the vessel IBT Zorra filed a brief in opposition challenging El Fénix' Motion for Summary Judgment claiming among other arguments that the policy exclusions

---

**2.** Article 20 of the PRWACA provides covered employers with immunity against any action or suit by an employee. The immunity provided is essential to the "objective liability system adopted as means of encouraging every employer to take out insurance, without which the system could not be effective." *Vélez v. Halco Sales, Inc.,* 1969, 97 P.R.R. 426, 430. The immunity afforded to the employer by the PRWACA has been considered to precluded tort actions by an employee against insured employers. *Administración F.S.E. v. Flores Hnos. Cement Products,* 107 D.P.R. 860, 789, 792 (1978), 7 Official Translations 860, 861–62 (1982); *B.C.R. Co., Inc. v. Tribunal Superior,* 1972, 100 P.R.R. 753; *Cortijo Walker v. A.F.F.,* 1969, 91 P.R.R. 577.

**3.** According to the Jones Act,

"[a]ny seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right to trial by jury ... Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located."
46 U.S.C.App. § 688.

**4.** Liability for unseaworthiness stems from an accident pertaining to essential maritime or ship's services rendered with the vessel owner's consent. It serves as a way of securing indemnity against hazards placed upon maritime workers. *McAllister v. Magnolia Petroleum Co.,* 357 U.S. 221, 78 S.Ct. 1201, 2 L.Ed.2d 1272 (1958).

relied on by El Fénix in its Motion for Summary Judgment are inapplicable to the case at bar. (Docket No. 104).

### SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). "Where defendant has invoked Rule 56 and asserted a lack of supporting evidence, the plaintiff must establish the existence of a triable issue which is both genuine and material to his claim." *Pagano v. Frank*, 983 F.2d 343, 347 (1st Cir.1993) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "In this context, 'genuine' means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party [and] 'material' means that the fact is one that might affect the outcome of the suit under the governing law." *United States v. One Parcel of Real Property with Buildings, Appurtenances, and Improvements, Known as Plat 20, Lot 17*, 960 F.2d 200, 204 (1st Cir.1992).

The nonmovant must "present definite, competent evidence to rebut the motion." *Mesnick v. General Electric Co.*, 950 F.2d 816, 822 (1st Cir.1991), *cert. denied*, 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992). Thus, "[s]ummary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation," *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990). Furthermore, although "[n]o credibility assessment may be resolved in favor of the party seeking summary judgment," *Woodman v. Haemonetics Corp.*, 51 F.3d 1087, 1091 (1st Cir.1995), a court must be aware that "[o]n issues where the nonmovant bears the ultimate burden of proof at trial, he may not defeat a motion

for summary judgment by relying on evidence that is 'merely colorable' or 'not significantly probative.'" *Pagano v. Frank*, 983 F.2d at 347 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249–50, 106 S.Ct. 2505). Hence, applying these criteria, the Court is to consider that "not every genuine factual conflict necessitates a trial. It is only when a disputed fact has the potential to change the outcome of the suit under governing law, if found favorably to the nonmovant, that the materiality hurdle is cleared." *See Wilfredo Martinez v. Rafael Colon*, 54 F.3d 980 (1st Cir.1995) (citing *United States v. One Parcel of Real Property*, 960 F.2d 200, 204 (1st Cir.1992)). Consistent with the Summary Judgment standard, "we canvas the material facts in a light that flatters, but does not impermissibly distort," the nonmoving party's claims, and indulge all reasonable inferences in favor of that party. *See Wilfredo Martinez*, 54 F.3d at 982; *Libertad v. Welch*, 53 F.3d 428 (1st Cir.1995).

### DISCUSSION

**I. The Policy's Exclusions and Exceptions**

The Commercial General Liability Policy issued by El Fénix to Pan American, defines tort liability and commits to provide coverage under Section V, clause number 6, section (f). Clause number six, section (f) provides that:

"6. "Insured contract" means:

(f). [t]hat part of any other contract or agreement pertaining to your business ... under which you assume the tort liability of another party to pay "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement."

(Docket No. 101, Exhibit A). El Fénix alleges that exclusions to the Commercial General Liability Policy bar plaintiff from coverage, particularly exclusion (g). Said exclusion states that insurance does not

apply to "(g). '[b]odily injury' or 'property damage' arising out of the ownership, maintenance, use of . . . watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading." '" (Docket No. 101). Hence, because plaintiff's sustained injuries doing work pertaining to the maintenance and use of the IBT Zorra, a vessel owned and operated by the insured Pan American, the watercraft liability exclusion precludes coverage for the injuries.

In order to interpret the contract's exclusionary language, the court must refer to local law. *United States Fire Insurance Co. v. Producciones Padosa, Inc.*, 835 F.2d 950 (1st Cir.1987). Under Puerto Rican law, when the Insurance Code fails to address an insurance related issue, the Civil Code applies as a supplemental source of law. *See id.; Casanova Diaz v. Puerto Rican Insurance Co.*, 1978 WL 48889, 106 D.P.R. 689 (1978), 6 Official Translations 960 (1982); *Sandoval v. Puerto Rico Life Ins. Co.*, 1970, 99 P.R.R. 281. According to P.R. LAWS ANN., tit. 31, § 3471 (1990): "[i]f the terms of a contract are clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its stipulations should be observed."

Notwithstanding, Puerto Rican law clarifies that insurance contracts are contracts of adhesion, and consequently, they are liberally construed in favor of the insured. *Rosario v. Atlantic Southern Ins. Co. of P.R.*, 1968, 95 P.R.R. 742. Further, any doubts regarding the incontestability clauses or disability benefits exclusions in insurance policies must be resolved in favor of the insured. *Rodriguez v. John Hancock Mut. Life*, 110 D.P.R. 1 (1980), 10 Official Translations 1 (1981). However, the plaintiff must allege facts which show that damages are covered within the policy coverage. *Vega v. Pepsi–Cola Bot. Co.*, 118 D.P.R. 661 (1987), 18 Official Translations 763 (1993).

Pan American accepts that exclusion clause (g), clearly denies coverage to plain-tiff's injuries. (Docket No. 104). However, Pan American claims that the exemption is followed by an exception, which negates under the applicable facts of the case the effect of the exclusion. (Docket No. 104). The exception to exclusion (g) clearly states that:

"the exclusion does not apply to:

1) *A watercraft while ashore on premises you own or rent.*

2) A watercraft you do not own that is:

(a) less than 28 feet long; and

(b) Not being used to carry persons or property for a charge."

(Docket No. 101, Exhibit A) (emphasis added). In order to determine the merits of Pan American's allegation, the court must apply the facts and construe the terms of the insurance contract.

In Puerto Rico, it is a well established legal doctrine that in construing the terms of a contract, (including an insurance policy contract) the language used must be interpreted according to its common and general usage. *See Morales Garay v. Roldan Coss*, 1981 WL 176529, 110 P.R.Dec. 701 (1981); *Pagan Caraballo v. Silva*, 1988 WL 580770, 122 P.R.Dec. 105 (1988); *Garcia Curbelo v. A.F.F.*, 91 JTS 6 (P.R.1991); *Marin v. American Int'l Ins. Co.*, 94 JTS 132 (P.R.1994). Moreover, such treatment is also given to the exclusions contained within an insurance policy. *In re Reinforced Earth, Co.*, 925 F.Supp. 913 (D.P.R.1996). *See Marin v. American Int'l Ins.*, 94 JTS 132 (P.R.1994). Each exclusion has to be clear and unambiguous and must be functionary interpreted within the policy. *Id.; see also United States Fire Ins. Co. v. Producciones Padosa, Inc.*, 835 F.2d 950, 957 (1st Cir.1987) (citing *Liberty Mut. Ins. Co. v. Gibbs*, 773 F.2d 15, 17 (1st Cir.1985)). If "[a]n exclusion clause is clear and unambiguous and applicable, then it does not afford coverage despite whatever inferences may arise from the other clauses in the contract. Each exclusion clause should read independently from the others and according to its functions in the policy's general

agreement. Such construction shall be seriatim, not accumulative." *Meléndez Piñero v. Levitt & Sons*, 91 JTS 95 (P.R.1991).[5]

■ After reviewing the policy contract, the court finds that the contract clauses are clear and unambiguous in their wording and meaning, as to the issue of coverage pertaining to watercraft liability. However, the exclusions are accompanied by a series of exceptions that in this case invalidate exclusion (g)'s puissance. Moreover, the exceptions are uncluttered, not complicated, or hard to understand. *See de Rivera v. Southland Life Ins. Co.*, 105 D.P.R. 273 (1976), 5 Official Translations 373 (1982). The Court finds that the exceptions to the exclusions included in the policy, are clear and comprehensible to the average person, and consequently, also clear to sophisticated parties as in the instant case. *See id.; RCI Northeast Services Div. v. Boston Edison Co.*, 822 F.2d 199, 205 (1st Cir.1987).

Because the insured bears the burden of establishing coverage under an insurance policy, and because an exception to an exclusion creates coverage where it would otherwise not exist, "the insured must also prove that the exception affords coverage after an exclusion is triggered." *See St. Paul Fire & Marine Ins. Co. v. Warwick Dyeing Corp.*, 26 F.3d 1195, 1200 (1st Cir. 1994). In this case Pan American has proved that the exception to the exclusion is applicable, invalidating the exclusion of liability in the contract. *See Aeroquip Corp. v. Aetna Cas. And Sur. Co., Inc.*, 26 F.3d 893, 895 (9th Cir.1994). The uncontested facts presented by both opposing parties indicate that the IBT Zorra and the pier where the vessel was docked, both belonged to Pan American. (Docket Nos. 74, 104, 107). In addition, the IBT Zorra was ashore and moored in Pan American's pier for five days, before plaintiff sustained his injuries. (Docket Nos. 74, 104, 107). The watercraft, IBT Zorra, was therefore,

"ashore on premises ... [owned or rented]." (Docket No. 101, Exhibit A). Because the exception to the exclusion is clearly applicable to watercraft ashore and located on premises owned by Pan American, the Court concludes that the exclusion of coverage applicable to watercraft liability is invalidated pursuant to the clear terms of the contract.

The summary judgment standard is particularly applicable, because "the facts upon which liability is claimed or denied under an insurance policy are undisputed and the existence or amount of liability depends solely upon a construction of the policy, the question presented is one of law." *The Alan Corp. and East Side Oil Co. v. International Surplus Lines Ins. Co.*, 22 F.3d 339 (1st Cir.1994); (citing *Atlas Pallet, Inc. v. Gallagher*, 725 F.2d 131, 134 (1st Cir.1984)). Further, when an insurance policy provides coverage based on an exclusion, the insurer has a duty to defend the insured in court proceedings. *Reyes Lopez v. Misener Marine Constr., Inc.*, 664 F.Supp. 652, 657 (D.P.R.1987). *See also Hydro Sys. Inc. v. Continental Ins. Co.*, 717 F.Supp. 700, 703 (D.C.Cal. 1989), *aff'd*, 929 F.2d 472 (9th Cir.1991) ("where there is no potential of liability under a policy exclusion, there is no duty to defend."). In view of the above, there being no material facts as to this issue, and because the question presented relates to the resolution of an insurance contract controversy, which lies "within the province of the court and not the jury," the Court is firmly convinced that there is coverage, based on a construction of the policy contract, as a matter of law. *In re San Juan Dupont Plaza Hotel Fire Litig.*, 802 F.Supp. 624, 637 (D.P.R.1992).

## II. The Jones Act and General Principles of Maritime Law

■ Plaintiff's opposition to El Fénix' Motion for Summary Judgment contends

5. Also, under Puerto Rico law exclusion clauses of an insurance policy shall be interpreted restrictively, generally favoring coverage to the insured. Any ambiguity shall be construed in favor of the insured. However, the doctrine does not compel the exclusion clause to be construed in favor of the insured when such clause is clear and unambiguous against the insured. *Marin,* at 132 (P.R. 1994).

that the IBT Zorra's shipping articles signed in Sacramento, California, do not create a relationship between Nahan and Pan American, but one between Nahan and the IBT Zorra's master. As such, plaintiff asserts that section (f) of the policy, as quoted previously, extends policy protection to accidents related to the IBT Zorra in its *in rem* capacity, pursuant to the principles of general maritime law.[6] In addition, plaintiff asserts that the definition of "tort liability" found in section (f) clearly covers the sustained injuries, "since the Jones Act is liability imposed by law pursuant to 46 U.S.C.App. § 688, such tort liability being required by the terms of the policy as are those additional actions brought under general maritime law which charge the vessel with unseaworthiness." (Docket No. 101). The court agrees.

 Under admiralty law, an action for unseaworthiness may be commenced by filing an in rem action directly against the vessel. *Mitchell v. Trawler Racer, Inc.,* 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960). Charges pertaining to unseaworthiness under general admiralty law qualify as tort liability, as well as liability imposed under the Jones Act.[7] According to the record, plaintiff's injuries arose while working under contract for Pan American on a vessel owned by Pan American, the IBT Zorra. (Docket No. 101). Thus, any tort claim against the IBT Zorra will be answered by Pan American as its owner. Pan American provided coverage for the seaman working aboard the IBT Zorra under the PRWACA. (Docket Nos. 36, 101, 104). However, if it is determined by the court that the PRWACA does not cover plaintiff's damages, Pan American will be responsible for the damages under tort liability.[8] As a result, part (f) of the policy will extend coverage of plaintiff's injuries, because "[t]ort liability means a liability that would be imposed by law in the absence of any contract or agreement." *See Bergersen v. Commissioner of Internal Revenue,* 109 F.3d 56, 60 (1st Cir. 1997). However, plaintiff's coverage under the PRWACA has not been finally determined, because there are elements of "subjective intent" present as to plaintiff's residency status. *Woodman v. Haemonetics Corp.,* 51 F.3d at 1091. (Docket No. 74). Therefore, since there is an issue of material fact present as to plaintiffs residency status, which needs to be placed before a jury, El Fénix' summary judgment request is **DENIED**.[9] *See United States v. Plat 20, Lot 17,* 960 F.2d at 204.

**WHEREFORE,** the Court upon due deliberation, having found that El Fénix' General Liability Policy issued to Pan American covers the bodily injuries sustained by plaintiff on October 27, 1993 and that there are genuine issues of material fact as to plaintiff's residency status, hereby **DENIES** defendant, El Fénix' Motion For Summary Judgment.

**IT IS SO ORDERED.**

---

6. A suit to recover damages under 46 U.S.C.App. § 688 can only be brought *in personam* and not *in rem*. *In rem* suits are brought under general maritime law. *See Lauritzen v. Larsen,* 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953).

7. According to pertinent law: "[a] Jones suit is for a tort, in which respect it differs from one to enforce liability for maintenance and cure ..." *Lauritzen v. Larsen,* 345 U.S. at 588, 73 S.Ct. 921.

8. The PRWACA does not automatically apply to every injury that occurs in Puerto Rico.

*Lusson v. Carter,* 704 F.2d 646, 650 (1st Cir. 1983).

9. It has been stated that summary judgment for a defendant in an action for injuries sustained aboard a vessel in a foreign port, would not be warranted without giving the plaintiff the opportunity to substantiate his claim that the individual was an American resident and that he was employer for purposes of coverage under the Jones Act. *Grammenos v. Lemos,* 457 F.2d 1067 (2nd Cir. 1972).