Rebecca R. NIEVES, Individually and as Next Friend of Andrew J. Nieves and Alan J. Nieves, Minors, Plaintiffs,

v.

INTERCONTINENTAL LIFE INSURANCE COMPANY OF PUERTO RICO (Saint Lawrence Garment–Third Party Defendant).

Civ. No. 88–1840 (JP).

United States District Court,
D. Puerto Rico.

April 21, 1991.

Alberto J. Pérez Hernández, Hato Rey, P.R., for plaintiffs.

Fernando Pérez Colón, San Juan, P.R., for defendant.

Ayxa Rey Díaz, San Juan, P.R., for Saint Lawrence Garment.

## OPINION AND ORDER

PIERAS, District Judge.

The Court has before it the parties' cross motions for summary judgment. This case, originally part of an action removed to the District Court for the Southern District of Texas, Houston Division, was severed and transferred to this Court pursuant to an agreement and order issued by Honorable Gabrielle McDonald. *See* Docket Entry #1. This is an action in which the plaintiff, Rebecca R. Nieves and her children, claim medical expenses and life insurance proceeds under a policy issued by defendant Intercontinental Life Insurance Company of Puerto Rico ("Intercontinental"), to Saint Lawrence Garment Co., Inc. ("St. Lawrence"), for the benefit of a group of employees. The plaintiffs contend that their deceased husband and father, Anthony J. Nieves, had been covered under this policy although he was technically employed by the Office of Strategic Security Inc. ("OSS"). They further argue that from September 9, 1985, the date he suffered an accident, in Baton Rouge, Louisiana, until October 5, 1985, the date of death, Nieves continued to be covered by the policy. Plaintiffs seek $152,201.18 in medical payments, $10,000.00 for death benefits under the policy, plus funeral and burial expenses. The defendants deny that Nieves was covered by the policy, and essentially argue that even if the plaintiffs were covered by the insurance policy, the claim is extinct because they have already recovered, from the third parties who caused the death of Mr. Nieves, certain expenses in another legal proceeding.

Defendant Intercontinental has filed a third party complaint against St. Lawrence Garment Corp. alleging that: 1) St. Lawrence induced Anthony Nieves to submit an insurance application under Policy No. SSP–365–03–84; and 2) the inclusion of Nieves as a covered insured under the policy constituted a breach of the insurance

contract, which was specifically limited to include employees of St. Lawrence. They further argue that this breach of the contract induced Intercontinental to pay benefits to Nieves's dependents and that St. Lawrence should therefore be liable to the plaintiffs for the sums claimed in the complaint, and should reimburse Intercontinental for any amounts its pays out.

For the reasons stated below, we grant plaintiffs' motion as to the issue of coverage and life insurance benefits. We also partially grant defendant's motion as to the issue of medical and funeral expenses.

## I. SUMMARY JUDGMENT—THE LEGAL STANDARD

A motion for summary judgment is appropriately granted when:

[T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c).

■ A "genuine" issue is one that is dispositive and that must be decided at trial. *FDIC v. Municipality of Ponce*, 904 F.2d 740, 742 (1st Cir.1990). The issue must be decided at trial because the evidence, when viewed in the light most favorable to the nonmovant, would allow a reasonable juror to resolve the issue in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–250, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Mack v. Great Atlantic and Pacific Tea Co.*, 871 F.2d 179, 181 (1st Cir.1989). The evidence illuminating the factual controversy cannot be "conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve...." *Mack*, 871 F.2d at 181. A "material" fact is one which affects the outcome of the case and must be resolved before consideration of related legal issues. *Municipality of Ponce*, 904 F.2d at 742. Therefore, in a summary judgment motion, the burden is on the moving party to demonstrate "an absence of

evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2254, 91 L.Ed.2d 265 (1986). The nonmovant then bears the burden of establishing the existence of a genuine material issue. *Brennan v. Hendrigan*, 888 F.2d 189, 191 (1st Cir.1989). However, the nonmovant may not rest upon mere allegations or denial of the pleadings; it must respond, by affidavits or other supporting evidence, setting forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e).

■ In cases in which the parties have filed cross motions for summary judgment, the fact that both parties simultaneously argue that there is no genuine factual issue does not establish that a trial is unnecessary. 10A C. Wright, A. Miller, E. Cooper, 10A *Federal Practice and Procedure* § 2720, at 16–17 (1983). In the cross-motion context, the court must consider each motion separately, since each party, as a movant for summary judgment, bears the burden of establishing the non-existence of a genuine issue of material fact, and that movant's entitlement to judgment as a matter of law; the fact that one party had failed to sustain its Rule 56 burden does not automatically entitle the opposing party to summary judgment. *Id.* at 23.

## II. DISCUSSION

Because this is a diversity action, we apply the law of Puerto Rico, *see Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), in order to resolve the legal issues in this case.

### A. Plaintiff's Coverage under the Policy

■ The Insurance Code of Puerto Rico provides that every "insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any lawful rider, endorsement, or application attached to and made a part of the policy." 26 L.P.R.A. § 1125. *See also Puerto Rico Electric Power Authority v. Philipps*, 645 F.Supp. 770, 772 (D.P.R. 1986); *Banco de la Vivienda v. Pagán Ins.*

*Underwriters,* 111 D.P.R. 1, 6 (1981). When the Insurance Code of Puerto Rico does not provide an interpretive approach for a particular situation, the Civil Code is used as a supplemental source of law in interpreting the insurance agreement. *Gonzalez v. John Hancock Mutual Life Insurance Co.,* 927 F.2d 659, 660 (1st Cir. 1991); *see also Banco de la Vivienda,* 111 D.P.R. at 1. Article 1233 of the Civil Code, 31 L.P.R.A. § 3471, incorporates the general principle of contract law that if "the terms of a contract are clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its stipulations shall be observed."

In this case, the defendant claims that the plaintiffs are excluded from coverage under the policy because the policy was issued for employees of St. Lawrence who worked at least thirty hours a week. According to defendant, Mr. Nieves was not such an employee, and was therefore not an "eligible employee" under the terms of the insurance agreement.

The plaintiffs counter that Nieves and his family are "insured" under the terms of the policy, and that pursuant to the policy, St. Lawrence used other criterion in order to categorize Nieves as an "eligible employee" under the insurance agreement. They further argue that St. Lawrence voluntarily included them in the policy, Intercontinental accepted the enrollment application for Anthony Nieves, and represented to him that they were insured. In addition, they point out the following stipulated facts: Intercontinental issued a group policy, Number G–0365 and plaintiffs and decedent Anthony J. Nieves appeared as insured under the policy effective March 1, 1985, through March 1, 1986; Rebecca Nieves was named beneficiary of a $10,000.00 death benefit provision contained in the policy; an identification card was issued under this group policy, certificate number 82, naming Anthony J. Nieves as insured and affording coverage to his dependents; Intercontinental paid benefits to Anthony J. Nieves and his dependents under group policy Number G–0365, certificate number 82, for various claims, including claim numbers 1195580, 01195581, 01195583, 91195584, 91125084, and 31738120; Intercontinental admitted (in a letter dated March 24, 1986) that group policy Number G–0365, certificate number 82, afforded coverage to Anthony J. Nieves and that plaintiffs were entitled to the life insurance and health benefits provided by said policy,[1] and issued a check to Mrs. Nieves in the amount of $5,000 as partial payment of the policy's death benefit under the policy's death benefit provision. *See* Initial Scheduling Conference Order, Docket Entry #8, Agreement of Parties Nos. 3–5, 12 at 3–5 and attached exhibits; Proposed Pretrial Order filed by the parties, Docket Entry #20, Uncontested Facts Nos. 3–5, 12.

■ We disagree with the defendant Continental and conclude that Mr. Nieves and his dependents, the plaintiffs in this case, were covered under the policy. After thoroughly reviewing the entirety of the terms and conditions set forth in the insurance agreement, we find that Mr. Nieves was an "eligible employee," as well as an "insured" under Article I of the agreement. The policy names St. Lawrence as the policyholder and states that Intercontinental will make payments to persons entitled to such payments, under the terms and conditions of the policy. *See* Certified Translation of Intercontinental Life Insurance Policy, Defendant's Motion for Summary Judgment, Exhibit E, at 1. Article I, section (b) defines "employee" as "an employee who is working a minimum of at least 30 hours per week for the employer." Article I, section (c) of the contract defines "eligible employee" as "[e]very employee who fulfils [sic] the conditions mentioned above *or any other criterion used by the employer.*" (Emphasis added.)[2] In the same Article, section (d), the policy further defines "insured" by stating that "[b]y this term any

---

1. We note that this letter was not made part of the record in this case.

2. The original contract in Spanish states the "Todo empleado que cumpla con las condiciones antes mencionadas o algún otro criterio utilizado por el patrono."

individual and his dependents is meant who is named in his enrollment application, with whom the Intercontinental Life Insurance Company makes a subscription agreement." [3]

Article II of the policy lists the groups that are eligible to receive benefits under the comprehensive health plan and states that the following are eligible: "[a]ll employees declared eligible to partake of the benefits of this plan, in accordance with the terms and conditions under this contract ... [a]ll members of the family of the eligible employees who substantially depend upon the insured for their support."

Intercontinental claims that because Anthony Nieves did not work a minimum of thirty hours per week, he would not be an eligible employee entitled to benefits under the policy. However, the language of the policy clearly states that in order to be an eligible employee under the policy, the thirty hour requirement must be met, or the employee must fulfill "any other criterion used by the employer." The employer in the instant case opted to use "other criterion" in order to include Nieves as an "eligible employee" entitled to join the group plan.

According to Stanley Varón, Executive Vice President and minority stockholder of St. Lawrence from 1964 to 1987, and sole owner, shareholder, Chairman of the Board and Chief Executive Officer of OSS, while Mr. Nieves was working for OSS as a director in sales and general operations of the company, he was providing consulting services to Saint Lawrence. Mr. Varon stated that he asked Nieves to "devote some time to Saint Lawrence Garment so he could help us ... with internal pilferage, internal security and overall preparedness...." Deposition at 12. After Nieves had been with OSS for several months and had been assisting Varón at St. Lawrence, Nieves asked if he could be included in St. Lawrence's medical plan, and Varón responded, "I don't see why not. You are doing some work for Saint Lawrence." *Id.* Nieves was then included in the plan. Also, Mr. Varón stated that all the premiums for the policy were paid solely by St. Lawrence. Also, two other OSS employees whose job responsibilities either overlapped with responsibilities at St. Lawrence or who spent most of their time working at St. Lawrence were covered under the St. Lawrence group policy, so that alternate eligibility criteria had been applied in those instances. Varón Deposition at 21–26. Thus, even when viewed in the light most favorable to Intercontinental, this evidence shows that St. Lawrence applied the alternate criterion to Mr. Nieves in order to make him an "eligible employee" under the terms of the policy, and intended that he be covered under the policy.[4] Moreover, since Mr. Nieves was included among the covered persons under the policy from April 1, 1985 to November 1, 1985, *see* Pretrial Order Stipulation No. 17, the accident in this case occurred on September 9, 1985, and this type of accident is covered by the policy, *see* note 8 *infra*, the policy was in effect at the time of the accident.[5]

---

3. The Article I(d) definition in the original insurance policy, in Spanish, reads as follows: "ASEGURADO: Por este término se entenderá cualquier individuo y sus dependientes nombrados en su solicitud de ingreso con los cuales Intercontinental Life Insurance Company acuerde un convenio de suscripción."

4. In its motion for summary judgment, Intercontinental does not address the issue of alternate employee eligibility criterion, as expressed in the policy, Article I(c). Although the defendant cites *Fishel v. American Security Life Insurance Co.*, 835 F.2d 613 (5th Cir.1988), to support its contention that waiver or estoppel cannot be used to extend the scope of coverage or subject matter under a policy, that case is inapposite.

The policy in *Fishel*, as plaintiffs point out, was specifically limited to employees of the owner of the plan, and did not contain a provision permitting the employer to establish its own alternate employee eligibility criteria, as did the policy in this case.

5. Article XI of the Policy provides that the insurance under the plan "will terminate when you leave your employer's employment. Information related with [sic] the continuation of your insurance when your employment terminates can be obtained in [sic] the Company." In Spanish, the provision reads "Su seguro bajo el plan terminará cuando usted deja el empleo de su patrono. Información sobre la continuación de su seguro cuando termina su empleo, puede

## B. Effect of the Settlement with Third Parties

Intercontinental next argues that the plaintiffs are barred from recovering for the claimed medical and funeral/burial expenses incurred since they already recovered such expenses from the third party tortfeasors who were responsible for the death of Mr. Nieves. We conclude that the clear terms of the policy resolve this issue, and hold that the insured is not entitled to any amounts for medical services and fees. The parties have not cited, and we have not found, any provision in the policy covering the cost of funeral and burial expenses. Consequently, this request must also be denied.

■ The parties have stipulated that the decedent Anthony Nieves was the victim of an accident in Baton Rouge, Louisiana on September 9, 1985, and that as a result of said accident, he was hospitalized at Our Lady of the Lake Regional Medical Center, in Baton Rouge, Louisiana, from September 9, 1985, until the date of his death, October 5, 1985. The plaintiff, without citing any specific provision of the policy, contends that the cost of the medical treatment from the date of the accident until the date of death is covered under the policy. The final section of Article IV of the insurance contract, entitled "Hospitalization Services Outside Puerto Rico" directly speaks to this issue, and provides that

[s]ervices rendered outside of Puerto Rico are limited to a reimbursement of $200.00 per day of hospitalization.

Medical fees *must be paid by the insured directly to the physician who rendered the services.* The insured shall request reimbursement upon his return to Puerto Rico. The Company shall reimburse the same amount it would have paid an associate [6] physician on the island, in accordance with the rates in force.

Thus, under the unambiguous terms of the insurance policy, plaintiffs were obligated to pay the cost of medical fees directly to the physicians who rendered service to Mr. Nieves in Louisiana, and request the reimbursement of such costs upon returning to Puerto Rico. Because the plaintiffs have not submitted proof of payment of these services, and have not returned to Puerto Rico—the plaintiff's complaint states that they are resident citizens of Louisiana— they cannot be entitled to such payments under the terms of the policy. Further, because the policy limits reimbursement of hospitalization services rendered outside of Puerto Rico to $200.00 per day, plaintiffs would only be entitled to a reimbursement of $5,600.00 (28 days times $200.00) for hospitalization services rendered in Louisiana.[7] As explained by the above-cited provision of the policy, the medical fees would be reimbursed according to the equivalent amount Intercontinental would pay an as-

---

ser obtenida en la Compañia." The parties have stipulated that Mr. Nieves was a payrolled employee of OSS until September 30, 1985, and Mr. Nieves' coverage was paid from May 1, 1985 to November 1, 1985, thus mooting the issue of the termination clause.

6. The contract defines "associated physician" as "any doctor authorized to practice medicine in Puerto Rico, with whom this company has a contract to render medical-surgical and maternity services." Article I, section (h).

7. In the earlier stages of this case, the question arose whether Intercontinental was required to raise as a defense, in its answer, the assertion that the insurance policy provided for certain medical payments and not for others, and the question of whether Article XII, paragraph 7 of the policy applies to the proceeds of settlement in *Rebecca R. Nieves, et al. v. Robert H. Balti-*

*more, et al.,* Civil No. 85–1013–B, Middle District of Louisiana, so that it would benefit Intercontinental for any payments it must make under the policy, and whether this must have been raised as an affirmative defense. *See* Pretrial Conference Order, Docket Entry #21. The parties filed briefs on these issues, as ordered, and the Court ruled that Intercontinental could amend its answer to the complaint to add affirmative defenses since the plaintiff was not prejudiced by the added defenses. Further Pretrial Conference Order, Docket Entry #35(c).

The defendant thus filed an amended answer including, *inter alia,* the following affirmative defense: "The liability of defendant under Policy Number G–0365 is limited by the terms and conditions of the same, and plaintiffs are bound by them and must comply with all the requirements included therein in order to be entitled to receive the payments." Amended Answer, Docket #35(a), at 3.

sociate physician in Puerto Rico.[8] This fact was agreed upon at the first Pretrial Conference held before this Court: "[t]he parties orally briefed the Court regarding several facts that are no longer, or should no longer be, disputed: ... The policy provided for $10,000 accidental death benefits, $200 per day hospitalization, and other benefits." *See* Docket Entry # 21 at 2.

Because we have concluded that the clear terms of the policy resolve the issue of medical expenses and hold that the insured is not entitled to any expense for medical services and fees, and funeral expenses, we do not address the issue of compensation under the Civil Code of Puerto Rico, Article 1150, 31 L.P.R.A. § 3222.

### C. Plaintiffs' Entitlement to Death Benefits under Policy

■ As mentioned above, the parties agreed that the policy provided for $10,000 accidental death benefits. A perusal of the policy confirms this agreement and shows that two sections of Article XI, apply in this case. Under the section entitled "Life Insurance", the policy states, in pertinent part, that "$5,000.00 will be paid in the event you die for any reason, while insured under this policy. It will be paid to the person designated by you as the beneficiary. This benefit may be paid in a lump sum, in monthly installments or in a combination of one lump sum and monthly payments...." The section entitled "Accidental Death and Dismemberment," explains that "[p]ayment for dismemberment or

death due to an accident. If within the 90 days following the accident you suffer the following losses, the amount indicated will be paid according to the insurance to which you are entitled when such loss occurs: $5,000.00." It then lists "Accidental Death—the total amount: $5,000.00." [9] Therefore, according to the terms of the policy, death by accidental death, as in this case,[10] entitles the beneficiary to: 1) $5000.00 according to the "Life Insurance" section, and 2) an additional $5,000.00 according to section (3) of the "Accidental Death and Dismemberment" section. In accordance with this interpretation of the unambiguous terms of the policy, the parties have stipulated that "Rebecca [Nieves, plaintiff] was named beneficiary of a $10,000.00 death benefit provision contained in Intercontinental Group Policy No. G–0365 ... Intercontinental Life issued check number 37539, dated December 10, 1985, in the amount of $5,000.00, payable to Mrs. Rebecca R. Nieves, as partial payment of the $10,000.00 death benefit under group policy G–0365, certificate number 82.... Pursuant to plaintiff's request, Intercontinental placed a stop payment order on check number 37539 and agreed to send a substitute check to Mrs. Rebecca R. Nieves following the ten-day waiting period required by their bank." *See* Stipulation Nos. 3, 10, 11, Proposed Pretrial Order.

Clearly then, the life insurance coverage under the policy provided for $10,000.00 in death benefits, to which the plaintiffs are entitled.

8. Excluded from coverage in the policy are "work-related accidents, as well as others, in which in accordance with the laws of Puerto Rico or the United States, the patient has the right to be hospitalized without any cost to himself." Article X, "Services Not Included," (2). *See also* section (5). The same provision in the original policy, in Spanish, entitled "Servicios No Incluidos," provides "No se proveerán beneficios en caso de accidentes del trabajo y aquellos otros que, de acuerdo con las leyes de Puerto Rico o de los Estados Unidos, el paciente tenga derecho a ser hospitalizado sin costo alguno para él." Because the record suggests that Mr. Nieves was not legally entitled to be hospitalized without any cost to himself (the plaintiffs requested medical costs in the Louisiana suit as well as this suit), we find that this clause does not apply.

9. The provision in the original policy reads: "Paga por desmembramiento o muerte ocasionado por un accidente. Si dentro de 90 días después de un accidente usted sufriera las pérdidas detalladas a continuación, se la pagará la cantidad indicada de acuerdo con el seguro a que tenga derecho al ocurrir la pérdida: $5,000.00 ... (3) Muerte accidental—la cantidad total: $5,000.00."

10. The parties have stipulated that Mr. Nieves was the victim of a motor vehicle accident in Baton Rouge. The record further reveals that he was struck by a tractor-truck while performing duties as a security consultant in Louisiana.

## III. CONCLUSION

We need go no further. For the reasons stated above, defendant's motion for summary judgment is DENIED as to the issue of coverage under the policy and GRANTED as to the issue of medical and funeral expenses to be paid under the policy. Plaintiffs' motion is GRANTED as to the issue of coverage under the policy, and their entitlement to $10,000.00 in death benefits and DENIED as to the issue of medical and funeral expenses.

Because we have concluded that the plaintiffs were "eligible employees" under and were properly included as "insured" under the policy, the defendant's Third–Party Complaint against St. Lawrence is hereby DISMISSED.

IT IS SO ORDERED.