Rebecca R. NIEVES, Individually and as Next Friend of Andrew J. Nieves and Alan J. Nieves, Plaintiffs, Appellants,

v.

INTERCONTINENTAL LIFE INSURANCE COMPANY OF PUERTO RICO, Defendant, Appellee.

Rebecca R. NIEVES, Individually and as Next Friend of Andrew J. Nieves and Alan J. Nieves, Plaintiffs, Appellees,

v.

INTERCONTINENTAL LIFE INSURANCE COMPANY OF PUERTO RICO, Defendant, Appellant.

Nos. 91–1556, 91–1557 and 91–1661.

United States Court of Appeals, First Circuit.

Heard Nov. 5, 1991.
Decided May 14, 1992.

Eric A. Holden with whom Patricia A. Garcia, New Orleans, La., was on briefs, for plaintiffs.

Fernando Perez Colon, San Juan, P.R., for defendant.

Before CAMPBELL, Circuit Judge, BOWNES, Senior Circuit Judge, and SKINNER,* District Judge,

LEVIN H. CAMPBELL, Circuit Judge.

This appeal stems from a diversity action brought by Rebecca Nieves and her two minor children, Andrew and Alan Nieves (collectively, the claimants), seeking benefits after the death of her husband Anthony J. Nieves ("Nieves") under a life and health group insurance policy issued by Intercontinental Life Insurance Company ("Intercontinental").

On the parties' cross motions for summary judgment, the United States District Court for the District of Puerto Rico ruled that Nieves was an "eligible employee" hence an insured, under the terms of the policy. The court accordingly determined that his widow and minor children were entitled to recover policy benefits for life and accidental death. The district court declined, however, to award claimants medical or funeral expenses. Both parties appealed. The claimants challenge the denial of medical expenses, and the insurance company denies that Nieves was an "eligible employee" within the meaning of the policy. We conclude that the district court erred in determining that Nieves was an "eligible employee" and therefore reverse its judgment in favor of the widow and

minor children. We affirm its denial of expenses.

## I. *Background*

In 1983, Nieves worked as a security consultant for Associated Grocers, Inc., in East Baton Rouge, Louisiana. In June 1984, Nieves moved to Puerto Rico to work for a company named the Office of Strategic Security ("OSS"). OSS's business was to provide guard and security services for corporate clients—especially protection to company property and to executives during labor disputes. Stanley Varon ("Varon") was the owner and sole stockholder of OSS. Varon was also the Chief Executive Officer of St. Lawrence Garment Company ("St. Lawrence"), a manufacturer of ladies' and children's underwear, with several plants located throughout the island. St. Lawrence occasionally contracted for the services of OSS's employees on a part-time basis to provide internal security for St. Lawrence.

After Nieves began working for OSS, trouble arose at St. Lawrence. Varon requested Nieves to assist there and Nieves complied. According to Varon's deposition, Nieves' services at St. Lawrence amounted to two or three hours of his time a week. There was no written employment contract between Nieves and St. Lawrence; however, while rendering services for St. Lawrence, Nieves remained at all times on OSS's payroll.

OSS did not provide life or health insurance for their employees. After rendering services for St. Lawrence for a few months, Nieves asked Varon if he could be enrolled under St. Lawrence's health and life insurance policy. Varon indicated that since Nieves was doing some work for St. Lawrence, he did not see why Nieves could not be included in St. Lawrence's group insurance policy. In his deposition, Varon indicated that he did not instruct anyone to do anything concerning Nieves' request.

Shortly thereafter, Nieves filled out an enrollment application dated March 21, 1985, seeking admission into St. Lawrence's group health and life insurance

* Of the District of Massachusetts, sitting by designation.

with Intercontinental. In his enrollment application, Nieves gave his employer's name as "St. Lawrence Garment Co., Inc." and his employment date as "November 5, 1984."

Following receipt of the application, Intercontinental issued policy number S.S.P. 365–03–84. Nieves appeared as the insured under that policy, effective March 1, 1985 through March 1, 1986. His wife, Rebecca Nieves, was named beneficiary of the $10,000 death benefit provision contained in the policy. Intercontinental issued an identification card and certificate number 82, naming Nieves as insured and affording coverage to his dependents. The premiums of $115.10 per month corresponding to Nieves' coverage were paid by St. Lawrence from May 1, 1985 to November 1, 1985. In 1985, Intercontinental paid for benefits to Nieves and his dependents under the policy for various small medical claims.[1]

On August 25, 1985, Nieves left Puerto Rico and moved back with his family to Louisiana. The record is unclear as to the exact date when Nieves ceased to be an employee of OSS and his reasons for leaving. The parties stipulated that Nieves remained on OSS's payroll until September 30, 1985. In his deposition, Mr. Varon explained that retaining Nieves on OSS's payroll was only a friendly accommodation because of Nieves' weak finances at the time of his departure from Puerto Rico, not because he was doing work for OSS.

While residing in Louisiana, on or about September 9, 1985, Nieves was struck by a motor vehicle. At the time of the accident, Nieves was performing duties as a security consultant for Associated Grocers, Inc., on the company's premises located at 8686 Anselmo Lane in East Baton Rouge, Louisiana. As a result of the injuries he suffered, Nieves was hospitalized in the intensive care unit of Our Lady of the Lake Regional Medical Center until the day of his death on October 5, 1985. The medical expenses incurred for his treatment amounted approximately to $152,100.18.

On October 31, 1985, the claimants filed an action for damages in the United States District Court for the Middle District of Louisiana against the parties allegedly responsible for the accident that caused Nieves' injuries and death. In that action, plaintiffs itemized their claimed damages. Among these were $200,000 for medical and funeral expenses and court costs. This action was eventually settled and was dismissed pursuant to an order entered on October 17, 1988, approving a stipulation for dismissal. The terms and conditions of the settlement agreement were set forth in a document titled "Settlement Agreement and Release" which provided for a global settlement for the amount of $1,297,174.

On November 17, 1985, Nieves' widow and minor children filed a claim for benefits under Intercontinental's group policy issued to insure the employees of St. Lawrence. Initially, Intercontinental issued its check in the amount of $5,000, payable to Mrs. Rebecca Nieves, as partial payment of the $10,000 death benefit under the policy. Pursuant to Mrs. Nieves' request, Intercontinental placed a stop payment order on check number 37539 and agreed to send a substitute check to Mrs. Nieves following the ten-day waiting period required by their bank. After further investigation, Intercontinental informed the comptroller of St. Lawrence in a letter dated April 15 1986, that it would not pay benefits because Nieves was never an employee of St. Lawrence. Intercontinental gave Mrs. Nieves a check in the amount of $740.40, returning the premiums paid for Nieves by St. Lawrence, less claims paid by Intercontinental. Mrs. Nieves did not cash this check.

As a result of Intercontinental's refusal to pay, the claimants initiated a separate action against Intercontinental to recover the benefits provided by the insurance policy. This action was originally filed in the Texas state court. It was removed to the

1.

| Claim Number | Date |
|---|---|
| 01195580 | 8–12–85 |
| 01195581 | 8–12–85 |
| 01195583 | 8–21–85 |

| Claim Number | Date |
|---|---|
| 01195584 | 8–25–85 |
| 01125084 | 8–30–85 |
| 31738120 | 9–18–85 |

United States District Court for the Southern District of Texas by one of the insurance companies named as defendants and not a party to this appeal. On October 19, 1988, that court entered an agreed order severing and removing to the United States District Court for the District of Puerto Rico the portion of the action related to Intercontinental.

In the United States District Court for the District of Puerto Rico, both parties filed motions for summary judgment. The beneficiaries' contention was that they were entitled to receive life and accidental death benefits as well as medical or funeral expenses in accordance with the terms of the policy. On its part, Intercontinental argued that Nieves had never been an employee of St. Lawrence and, therefore, his beneficiaries were not entitled to receive *any* benefits under an insurance policy issued exclusively to cover employees of St. Lawrence.

In an opinion and order dated April 21, 1991, the district court granted the beneficiaries' motion as to the issue of coverage and life insurance benefits and Intercontinental's motion as to the issue of medical and funeral expenses. 763 F.Supp. 1161. Both parties appealed. Intercontinental argues that the district court erred in determining that Nieves was an eligible employee and the beneficiaries contend that they were entitled to receive medical expenses.

## II. *Standard of Review*

Our review of a district court's grant of summary judgment is plenary. *See Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir.1990); *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir.1990). The construction of an insurance policy is a question of law, and the legal conclusions of the district court are, of course, not binding on the court of appeals. *New England Legal Foundation v. Mass. Port Authority*, 883 F.2d 157, 167 (1st Cir.1989). A reviewing court may make an independent examination of an insurance policy. *Atlas Pallet, Inc. v. Gallagher*, 725 F.2d 131, 134 (1st Cir.1984).

We turn first to the threshold issue of coverage. Since this is a diversity action, we evaluate Nieves' claims under the law of Puerto Rico. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

Under Puerto Rico law, the Insurance Code of Puerto Rico, 26 L.P.R.A. §§ 101, et seq., controls the interpretation of insurance contracts. *Roberto Meléndez Piñero v. Levitt & Sons of Puerto Rico, Inc.*, 91 J.T.S. 95, 9052 (December 13, 1991). Article 11.250 of the Insurance Code of Puerto provides that every insurance contract

shall be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any lawful rider, endorsement, or application attached and made a part of the policy. 26 L.P.R.A. § 1125.

*See also Puerto Rico Electric Power Authority v. Philipps*, 645 F.Supp. 770, 772 (D.P.R.1986). When the Insurance Code of Puerto Rico does not provide an interpretative approach for a particular situation, the Civil Code is used as a supplemental source of law in interpreting the insurance contract. *Puerto Rico Housing Bank v. Pagán Insurance Underwriters*, 11 Official Translations 3, 8 (1981); 111 D.P.R. 1, 6; *González v. John Hancock Mutual Life Insurance Co.*, 927 F.2d 659, 669 (1st Cir. 1991). Article 1233 of the Puerto Rico Civil Code provides that when "the terms of a contract are clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its stipulations shall be observed." 31 L.P.R.A. § 3471.

We are mindful that insurance contracts are considered adhesion contracts under Puerto Rico law, and that, as such, they are liberally construed in favor of the insured. *Rosario v. Atlantic Southern Ins. Co. of P.R.*, 95 P.R.R. 742, 748 (1968). But adhesion does not imply nullity of a contract. *U.R.H.C. v. Peña Ubiles*, 95 P.R.R. 301, 304 (1967). If the wording of the contract is explicit and its language is clear, its terms and conditions are binding on the parties. *Casanova v. Puerto Rico American Insurance Co.*, 6 Official Trans-

lations 963, 970 (1978); 106 D.P.R. 689, 696–697; *Rivera v. Insurance Co. of P.R.*, 3 Official Translations 128, 132 (1974); 103 D.P.R. 91, 93–94.

In determining if Nieves' beneficiaries are entitled to receive payments under the terms and conditions of policy # S.S.P. 365–03–84, issued by Intercontinental, we first turn to the language of the insurance policy.

### III.

The first page of the policy contains an agreement that, in consideration of the application made by St. Lawrence and the payment of all due premiums, Intercontinental will make the payments provided in the policy "to the person or persons entitled to such payments, under the terms and conditions of this policy." Article II provides that all employees "declared eligible" and their family members who substantially depend upon them for their support, "shall be eligible to receive the benefits" under the policy. Thus, an essential condition of coverage is that a person be an eligible employee of St. Lawrence. This requirement is rather typical in group insurance policies. As one leading commentator states:

> ... In a group policy, one's status as an eligible member of the group is the exact basis on which company offers the policy; one must come within the definition of a member of the group to qualify for coverage. Generally, the individual must be an employee to be covered under a group policy, unless the terms otherwise provide. The tendency, therefore, is not to include such persons as directors or independent contractors. 1 Appleman, *Insurance Law and Practice* § 44 at 119 (footnotes omitted).

Our first inquiry then is to determine whether Nieves was an eligible employee of St. Lawrence.

#### A. Nieves' Status

■ Article I provides definitions for the terms used in the policy. This Article contains two definitional clauses relative to the term "employee:"

(b) EMPLOYEE: This term shall mean an employee who is working a minimum of at least 30 hours per week for the employer.

(c) ELIGIBLE EMPLOYEE: Every employee who fulfills the conditions mentioned above or any other criterion used by the employer.

The uncontested deposition of Mr. Varon indicated that Nieves devoted only two or three hours per week to St. Lawrence. Nieves was, therefore, not an eligible employee of St. Lawrence under the definition in subsection (b).

■ The district court concluded that because Nieves did some work for St. Lawrence, which paid the premium for his coverage, he was an employee of St. Lawrence under the "any other criterion used by the employer" language contained in subsection (c). We disagree. The terms of an insurance policy should generally be understood in their most current and usual meaning, without giving too much attention to the grammatical rigor but to the general use and popular meaning words. *Morales Garay v. Roldán Coss*, 10 Official Translations 909, 916 (1981); 110 D.P.R. 701, 706. Under common and general usage, an "employee" is someone who works for another, receiving a salary or payment in exchange for his or her services. *See, e.g.*, the Puerto Rico Labor Relations Act, 29 L.P.R.A. § 63(3); the Act that regulates working hours and days, 29 L.P.R.A. § 288; the Puerto Rico Workmen's Accident Compensation Act, 11 L.P.R.A. § 39; the Act that regulates payment of wages, 29 L.P.R.A. § 176; Act No. 100, prohibiting employment discrimination, 29 L.P.R.A. § 146; and Act No. 80, providing compensation for employees discharged without just cause, 29 L.P.R.A. § 185a. Nieves, however, never received wages from St. Lawrence; rather, he was exclusively on OSS's payroll. OSS prepared Nieves' Puerto Rico Income Tax Withholding Statement. No evidence was presented that Nieves at any time signed an employment contract with St. Lawrence or that at any time St. Lawrence included Nieves on its payroll or withheld income taxes on wages for him as

required by Puerto Rico law. *See* 13 L.P.R.A. § 3141(b).[2] Nieves, nonetheless, listed St. Lawrence as his employer on the enrollment application but left blank the portion of the application specifying the salary he received.

It is true that Article 14.010 of the Insurance Code of Puerto Rico, 26 L.P.R.A. § 1401, provides that an insurance policy *may provide* for employees of other affiliated companies to be included under insurance policies issued to those companies. However, even assuming OSS could be found to be an affiliated company, the policy issued by Intercontinental in this case did not provide for including the employees of OSS or of any affiliated companies, and in the enrollment application Nieves did not list himself as being the employee of an affiliated company. Rather, he incorrectly represented that he was an employee of St. Lawrence itself.

The policy definition of eligible employee did, to be sure, include "Every employee who fulfills ... any other criterion used by the employer." But Nieves was not a St. Lawrence "employee," as that word is customarily understood, and there is no indication of some special "criterion" used by St. Lawrence under which Nieves fell. While St. Lawrence paid the premium, and while he performed services for St. Lawrence, he was at all times the employee of OSS. Indeed, when the fatal accident occurred, he had ceased performing work for OSS, although still on its payroll, and was performing security duties in the United States for another company. Information that an insured provides the insurance company in his enrollment application is used by the insurance company to determine whether or not to accept the risks to be transferred, the premium to be charged under the insurance policy, and the circumstances under which coverage will either be extended or will be excluded for particular risks. *See* R. Keeton and A. Widiss, *Insurance Law*, § 5.7 at 567 (1988). An insurer has a right to accurate information in order to assess and decide whether to accept or reject the actual risk or risks that are to be transferred. *Id.*

Claimants' proposed interpretation of what constituted an eligible employee would leave Intercontinental without any reasonable way to have screened what kind of risks it was insuring. Anyone who performed occasional services for St. Lawrence, and for whom St. Lawrence was willing to pay the premiums, could be included even though the worker's actual employer was someone else.

In asserting that his employer was St. Lawrence, Nieves clearly failed to disclose facts relevant to the risk Intercontinental was to insure.

> ... Whatever facts material to the risk which would influence a reasonable insurer, governed by the general rules applicable in such cases, either to reject the risk or to charge a higher premium, must be stated, and the concealment of such facts vitiates the policy, for fair dealing requires that the insured should state everything which might influence the mind of the underwriter informing or declining the contract. Couch *On Insurance 2d* (Rev. ed) § 38:41 at 414 (footnotes omitted).

Thus, Nieves failed to disclose that most of his work was for others than St. Lawrence. His failure to disclose this fact could lead to adverse selection on the part of St. Lawrence. Adverse selection occurs when potential insureds are treated alike irrespective of some factor that differentiates them as insurance risks. *See* Keeton and Widiss, *Insurance Law, supra,* § 1.3(c). Employees, like Nieves, performing security services for others could be subject to considerably different hazards in connection with their employment than employees of St. Lawrence. As Nieves' real status was never communicated to Intercontinental, it would be unreasonable to conclude that Intercontinental agreed to accept this risk.

**2.** This section provides in relevant part:

**Requirement of withholding;** Every employer making payment of wages shall deduct and withhold upon the amount of the wages a tax determined in accordance with the following schedule ...

## B. Coverage by Estoppel

 The claimants argue that since Varon told Nieves that he could be included in the insurance policy, and an enrollment application was filled out and the premiums were paid, Intercontinental should be estopped from claiming that Nieves is not an eligible employee. A short answer to this argument is that Nieves' failure to provide accurate information as to his employer eliminates any possible waiver or estoppel. Intercontinental was entitled to rely upon representations made by Nieves in his enrollment application, the falsity of which it did not discover until after Nieves' death.

Moreover, under Puerto Rico law, the coverage or scope of an insurance policy cannot be extended by waiver or estoppel. The Supreme Court of Puerto Rico has held that:

> Insurance contracts cannot be created by estoppel. That doctrine cannot be invoked by an insured to create a primary liability of the insurer for which all elements of a binding contract are necessary ... It has been repeatedly held that the doctrine of waiver and estoppel cannot be used to extend the coverage of an insurance policy or create a primary liability, but may only affect rights reserved therein ... *Under no conditions can the coverage be extended by waiver or estoppel* ... While a forfeiture of benefits contracted for in an insurance policy may be waived, the doctrine of waiver or estoppel cannot create a liability for benefits not contracted for. Nor may a contract, under the guise of a waiver be reformed to create a liability for conditions specifically excluded by the specific terms of the policy ... (emphasis added)

*Luis E. García Curbelo v. Autoridad de Fuentes Fluviales*, 91 J.T.S. 6, 8307 (January 24, 1991) (quoting from 16B *Appleman Insurance Law and Practice* § 9090).

We conclude that Nieves was not an "eligible employee" under the terms and conditions of the insurance policy issued by Intercontinental to cover employees of St. Lawrence and that, therefore, the claimants are not entitled to payment of the benefits under the policy. This conclusion makes it unnecessary to consider the remaining issues raised by the claimants.

*The judgment is reversed and the appeals in 91–1556 and 91–1557 are dismissed. Costs in favor of Intercontinental against Nieves in all appeals.*