TEXTO COMPLETO DE LA SENTENCIA
La parte apelante, John Hancock Mutual Life Insurance Co. (Hancock), solicita que revoquemos la sentencia sumaria emitida por el Tribunal de Primera Instancia, Sala Superior de Carolina, la cual determinó que la parte apelada, Sandra N. Díaz Martínez y otros, tenía derecho a los beneficios por muerte a tenor con la términos de la cubierta temporera contenidos en la póliza de seguro de su esposo fallecido.
Atendido el recurso apelativo, se revoca la sentencia sumaria y se devuelve el caso al Tribunal de Primera Instancia, para que celebre una vista a los fines de determinar si se le hizo creer al solicitante de la póliza que quedaría cubierto desde el momento que pagó la prima por adelantado. Veamos los fundamentos.
I
El señor Julio César Cortés Meléndez, alegamente, se reunió con la señora Marilyn León Acosta para discutir sus opciones en cuanto a una póliza de seguro de vida. La señora León Acosta era agente de seguros de Hancock, para la fecha de los hechos que dieron margen a la demanda. El 4 de abril de 1996, el señor Cortés Meléndez suscribió una solicitud para una póliza de seguro de vida con Hancock del tipo "Whole Life", por la cantidad de $300,000.00. Los beneficiarios en la referida póliza de seguro de vida eran su esposa, la apelada, señora Sandra N. Díaz Martínez, y sus hijos menores Julio, César y Tiana. (Ap. 5, pág. 45.)
El señor Cortés Meléndez le entregó a la señora León Acosta un cheque por la cantidad equivalente a la prima anual de dicha póliza, que ascendía a $6,283.00. No surge del recurso ante nos que Hancock expidiera recibo por la cantidad recibida, sino que el mismo se adhirió a la solicitud. (Aps. 5 y 16, págs. 49 y 122.)
*739 El 13 de mayo de 1996, el señor Cortés Meléndez murió sin haberse hecho los exámenes médicos requeridos en la solicitud de la póliza de seguro. Para el 23 de mayo de 1996, la apelada presentó ante la compañía de seguros una reclamación de los beneficios de la póliza por la muerte de su esposo. Miguel A. Rivera, agente general de Hancock, le envió una carta fechada 16 de agosto de 1996 en la cual le indicaba que la compañía había decidido no aceptar la reclamación por la muerte de su esposo, devolviéndole el cheque de la prima que se le había entregado a la agente Marilyn León Acosta. (Ap. 16, pág. 133.)
Como consecuencia de ello, la parte apelada, la señora Díaz Martínez, presentó demanda ante el Tribunal de Primera Instancia solicitando el pago de la póliza de seguro, toda vez que Hancock había denegado Cubierta, luego de haber hecho representaciones dirigidas a establecer que la póliza de vida estaba en vigor desde la fecha en que se llenó la solicitud y se pagó el importe de la prima. (Ap. 1, pág. 1.)
Luego de varios trámites ante el foro de instancia y concluido el descubrimiento de prueba, Hancock presentó moción de sentencia sumaria en la que adujo que no existía relación contractual con el señor Cortés Meléndez, toda vez que éste no se había realizado las pruebas médicas necesarias, según lo requería el contrato de seguros. Adujo, además, que, según el texto claro de la póliza, ningún agente o examinador médico podía cambiar las condiciones del contrato de seguro y que la póliza no cubría beneficios por muerte accidental según estaba reclamando la parte demandante aquí apelada. Señaló que, aunque la parte apelada alegaba que la señora León Acosta hizo unas representaciones a nombre de Hancock de que había cubierta desde que se compró la póliza, lo cual fue negado, esta controversia resultaba inmaterial debido a los términos claros y expresos del contrato de seguros.
A tales fines, Hancock incluyó una declaración jurada de Paul Patrie, "Senior Underwriting Consultant" de Hancock, en la que declaraba que el señor Cortés Meléndez llenó una solicitud de seguro de vida, la cual no incluía beneficios por muerte accidental. Que la solicitud no fue enviada a Hancock, que no se le había dado el recibo condicional al señor Cortés Meléndez debido a que éste no se sometió a los exámenes médicos, y que Hancock no recibió beneficio económico alguno, por lo cual no procedía la reclamación presentada. (Ap. 5, pág. 43.)
La señora Díaz Martínez solicitó que se dictara sentencia sumaria a su favor, pues la agente de Hancock le requirió al potencial asegurado que emitiera el pago de primas por adelantado, bajo la promesa de que la efectividad de la póliza de seguros entraría en vigor al momento del pago de la prima. (Ap. 16, pág. 87.)
Con tales mociones, el Tribunal de Primera Instancia dictó sentencia sumaria concluyendo que la apelada tenía derecho a la cubierta de la póliza.
II
Resumido los hechos, procedemos a comentar la norma jurídica aplicable a la controversia presentada.
Nuestro ordenamiento jurídico codifica sustantivamente, tanto el contrato de seguro como los principios básicos que rigen su interpretación. Arts. 11.010 y ss. del Código de Seguro, 26 L.P.R.A. sec. 1101, et. seq. Méléndez Pinero v. Levitt & Sons, 129 D.P.R. 521, 535 (1991).
Dispone el Art. 11.250 del Código de Seguros que todo contrato de seguro deberá interpretarse globalmente a base del conjunto total de sus términos y condiciones, según se expresen en la póliza y según se hayan ampliado, extendido o modificado por aditamento, endoso o solicitud adherido a la póliza y que forme parte de ésta. 26 L.P.R.A. see. 1125.
Como regla general, los contratos de seguros, por ser considerados contratos de adhesión, se interpretan liberalmente a favor del asegurado. Esta norma no tiene el efecto de obligar a que se interprete a favor del asegurado una cláusula que favorece expresamente al asegurador. Quiñones López v. Manzano Pozas, opinión *740 de 25 de junio de 1996, 96 J.T.S. 95, pág. 1306.
En relación con la interpretación de contratos de seguros, éstos deben ser generalmente entendidos en su más corriente y usual significado, sin atender demasiado al rigor gramatical, sino al uso general y popular de las voces. Pagán Caraballo v. Silva Ortiz, 122 D.P.R. 105, 110 (1988)
No debe perderse de vista, sin embargo, el hecho que el Tribunal Supremo ha resuelto que en caso de dudas en la interpretación de una póliza de seguros y en particular de una cláusula de exclusión, debe resolverse de modo que se realice el propósito de la misma de proveer protección al asegurado. Es por eso que no se favorecerán las interpretaciones sutiles que le permitan a las compañías aseguradoras evadir su responsabilidad. PFZ Properties, Inc. v. General Accident Insurance Co., opinión de 7 de septiembre de 1994, 94 J.T.S. 116, pág. 124; Marín v. American Int'l. Ins. Co., opinión de 28 de octubre de 1994, 94 J.T.S. 132, pág. 347.
Cuando los términos, condiciones y exclusiones de un contrato de seguros, que es ley entre las partes, son claros, específicos y no dan margen a ambigüedades o diferentes interpretaciones, debe hacerse valer los mismos de conformidad con la voluntad de las partes. Martínez Pérez v. Universidad Central de Bayamón, opinión de 11 de junio de 1997, 97 J.T.S. 98, pág. 1225.
Ahora bien, cuando el lenguaje utilizado en las cláusulas de un contrato de seguros adolece de ambigüedad, los tribunales son los llamados a interpretar, caso a caso, el conjunto de las cláusulas del contrato, con miras a determinar cuáles eran las expectativas de las partes al pactar la cubierta, conscientes de que toda ambigüedad debe ser resuelta a favor del asegurado. A.A.A. v. Librotex, Inc., opinión de 4 de abril de 1997, 97 J.T.S, 41, pág. 825.
III
Discutida la norma general sobre el contrato de seguros, debemos comentar la doctrina sobre el resguardo provisional.
El Art. 11.210 del Código de Seguros, establece que:

“(1) El resguardo provisional se utiliza para hacer obligatorio el seguro temporalmente, pendiente de expedición de la póliza. Podrá ser oral o escrito. Ningún resguardo provisional será válido después de la fecha adquirida en relación al mismo, después de la expedición de la póliza por la cual se dio, o después de haber transcurrido un período razonable que se establecerá mediante reglas y reglamentos que promulgará el Comisionado.

(2) Un resguardo provisional incluirá todos los términos usuales de la póliza en relación con la cual se emita dicho resguardo.

(3) El Comisionado podrá suspender o revocar la licencia de cualquier agente que expida o intente expedir un resguardo provisional en cuanto a cualquier asegurador nombrado en el mismo, a quien no esté autorizado a obligar de ese modo. ”

26 L.P.R.A. see. 1121.
Nuestro más alto foro ha expresado que cuando la aseguradora acepta el pago de la prima con la solicitud, se establece un seguro interino o temporero hasta que el seguro permanente se formalice o hasta que la compañía rechace la solicitud y devuelva el dinero recibido. Todo ello bajo el fundamento de que las condiciones de contratación son muy desiguales y desfavorables para el asegurado y que resulta irrazonable que la compañía acepte el dinero y no asuma responsabilidad alguna. Existe el contrato de seguro temporero cuando el asegurado paga la prima inicial y la compañía o su agente reciben el pago. Para terminar dicho contrato temporero, la compañía no solamente debe rechazar el riesgo, sino también devolver el importe de la prima pagada. Esta norma *741 clara y uniforme establece certeza razonable en la industria de seguros y en esta clase de contratos. Vda. de Rivera v. Southland Life Ins. Co., 105 D.P.R. 273, 276-277 (1976).
La posición generalizada es que cuando la compañía recibe el importe de primas por adelantado y entrega un recibo o documentos ambiguos, o se le ha hecho creer al comprador de la póliza que quedó asegurado desde que hizo el pago, existe un seguro interino o temporero que lo cubre hasta que la aseguradora acepta el riesgo o lo rechace y devuelva el dinero. Id., pág. 277.
IV
Una vez analizado el aspecto sobre el derecho de seguros, procedemos a esbozar el aspecto procesal.
La Regla 36.3 de Procedimiento Civil dispone que se dictará sentencia sumaria si el promovente demuestra que no hay controversia real sustancial en cuanto a ningún hecho material y que como cuestión de derecho procede dictarse. 32 L.P.R.A. Ap. III; Fernández & Gutiérrez Inc. v. Municipio de San Juan, opinión de 19 de marzo de 1999, 99 J.T.S. 31, pág. 726; Ríos Jaimán v. Cidra Manufacturing Operations of D.P.R., Inc., opinión de 15 de junio de 1998, 98 J.T.S. 73, pág. 1056.
El propósito de dicho mecanismo es aligerar la tramitación de los casos permitiendo que se dicte sentencia sin necesidad de que celebre una vista evidenciaría, cuando de los documentos no controvertidos que se acompañan con la solicitud y de la totalidad de los autos, surge que no existe controversia sobre los hechos materiales, por lo cual sólo corresponde aplicar el derecho. Partido Acción Civil v. E.L.A., opinión de 25 de febrero de 2000, 2000 J.T.S. 33, págs. 681-682.
Cuando hay controversia sobre elementos subjetivos sobre intención, propósitos mentales o factores de credibilidad, no es aconsejable que los tribunales utilicen el mecanismo extraordinario de sentencia sumaria para resolver una causa de acción. Piñero González v. A.A.A., opinión de 23 de octubre de 1998, 98 J.T.S. 140, pág. 216; Casto Soto v. Hotel Caribe Hilton, opinión de 17 de octubre de 1994, 94 J.T.S. 128, pág. 311.
Nuestro más alto foro ha sido claro al reiterar que, aunque la sentencia sumaria es un mecanismo práctico y viable, los tribunales deben cerciorarse de la total inexistencia de controversias de hecho, pues, se podría despojar a un litigante del derecho a juicio y a su día en corte, principio fundamental del debido proceso de ley. Audiovisual Language v. Sistema de Estacionamiento Natal Hermanos, opinión de 12 de diciembre de 1998, 98 J. T.S. 147, pág. 400; Roig Comercial Bank v. Rosario Cirino, 126 D.P.R. 613, 617-618 (1990).
Es necesario el recalcar que sólo procede dictar sentencia sumaria cuando surge claramente que el promovido por la moción no puede prevalecer bajo ningún supuesto de hechos y que el tribunal cuenta con la verdad de todos los hechos necesarios para poder resolver la controversia. Hernández Villanueva v. Hernández, opinión de 27 de enero de 2000,2000 J.T.S. 26, pág. 608.
V
Con este marco doctrinal, analicemos la controversia ante nuestra atención.
La solicitud de la póliza firmada por el señor Cortés Meléndez contenía un recibo y acuerdo de seguro condicional temporero (Receipt and Conditional Temporary Insurance Agreement), el cual en su parte pertinente establece que:

“There is a total temporary insurance coverage limit of $250,000 on all applications pending on each person proposed for insurance with John Hancock Mutual Life Insurance Company and John Hancock Variable Life Insurance Company, regardless of the number of applications, and the face amounts of the policies applied for.

Parts A and B of the application and any required medical examinations and tests must be completed before 
*742
Temporary Insurance Coverage becomes effective. ”

La póliza contiene una cláusula que establece en lo pertinente lo siguiente:

“No agent or medical examiner is authorized to make or discharge contracts or waive or change any of the conditions or provisions of any application, policy, or receipt, or to accept risks or pass on insurability. Notice to or knowledge of any agent or medical examiner, whenever given, is not notice to or knowledge of the Company. ”

En el presente caso, al igual que el caso de Vda. de Rivera v. Southland Life Ins. Co., supra, la solicitud de seguro tiene una cláusula de resguardo, la antes citada, que dispone que la póliza de seguro entraría en vigor una vez el solicitante se realizara las pruebas médicas requeridas.
No obstante, en el caso ante nos, existe una controversia real que debe ser dilucidada en los méritos y no mediante documentos en cuanto a si la señora León Acosta, agente de seguro de Hancock, le ofreció la póliza de seguro al señor Cortés Meléndez y le hizo representaciones de que estaba asegurado desde el pago de la misma, independientemente de que al momento de su muerte no se hubiera realizado el examen médico.
Alega la parte apelante que no es importante resolver la controversia sobre si la señora León Acosta le hizo creer al señor Cortés Meléndez que estaría asegurado desde el momento en que pagó la cantidad de la prima, debido a que el contrato era claro en cuanto a que no entraría en vigor hasta después de que se realizara los exámenes.
No tiene razón.
En Vda. de Rivera v. Southland Life Ins. Co., supra, el Tribunal Supremo precisamente expresó que, cuando el asegurado paga la prima inicial y la aseguradora o su agente acepta el pago de la prima con la solicitud y hacen representaciones al asegurado que tiene cubierta desde ese momento, se establece un seguro temporero hasta que el seguro permanente se formalice o hasta que la compañía rechace la solicitud y devuelva el dinero recibido.
En el presente caso, aunque no hay controversias de hechos de que la solicitud del seguro de vida del señor Cortés Meléndez no fue rechazada ni se le devolvió el cheque que suscribió y entregó a la agente de seguros antes de su muerte, es necesario el determinar si a éste se le hizo creer que tenía cubierta desde que hizo el pago de la prima.
Esta controversia, por estar relacionada con factores de credibilidad y propósitos mentales, no puede ser dilucidada sumariamente con la prueba documental presentada, pues requiere el evaluarse mediante la prueba testifical que a tales fines se presente. Una vez se dilucide dicha controversia que es sobre factores de credilidad, entonces el foro apelado podía estar en posición de disponer la reclamación presentada.
VI
Por los anteriores fundamentos, se revoca la sentencia sumaria dictada, se devuelve el caso para la continuación de los procedimientos. En el juicio, el Tribunal de Primera Instancia recibirá prueba para determinar si la agente de seguros o la compañía de seguros le hizo creer o hizo representaciones al señor Cortés Meléndez que estaba asegurado desde el momento que pagó por adelantado el monto de la prima y deberá disponer de la reclamación conforme a derecho.
Lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General